# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JEWISH WAR VETERANS OF THE UNITED STATES OF AMERICA, INC., RICHARD A. SMITH, MINA SAGHEB, and JUDITH M. COPELAND, | ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) ) | Case No. 1:07-mc-00220 (JB) Case No. 1:07-mc-00221 (JB) Case No. 1:07-mc-00222 (JB) |
| ROBERT M. GATES, Secretary of Defense, in His Official Capacity, | ) ) ) |  |
| Defendant. | ) ) ) |  |

## SURREPLY OF CONGRESSMEN DARRELL E. ISSA, BRIAN P. BILBRAY AND DUNCAN HUNTER TO PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Congressmen Darrell E. Issa, Brian P. Bilbray and Duncan Hunter respectfully submit this surreply to address one legal issue which appears for the first time in Plaintiffs' Reply Memorandum in Support of Motion to Compel Production of Documents Responsive to Subpoenas (June 25, 2007) ("Reply"). Specifically, the JWV Plaintiffs now appear to argue that this Court should conduct some sort of document-by-document review of those responsive documents which the three Members assert are privileged under the Speech or Debate Clause. *See* Plaintiffs' Reply at 21 n.11 (citing *In re Possible Violations of 18 U.S.C. §§ 201, 371*, 491 F. Supp. 211, 213-14 (D.D.C. 1980), and *In re Search of Rayburn House Office Bldg. Room No. 2113*, 432 F. Supp. 2d 100, 115 (D.D.C. 2006) (D.C. Cir. argued May 15, 2007)). This argument did not appear in the JWV Plaintiffs' Memorandum . . . in Support of Plaintiffs' Motion to Compel Production of Documents Responsive to Subpoena (May 23, 2007), and therefore we did not address that issue in our Consolidated Opposition . . . to Plaintiffs' Motions to Compel Production of Documents (June 13, 2007) ("Opposition").

As an initial matter, this new document-by-document review argument has been waived because it was not raised earlier. Furthermore, this Court does not need to reach this new issue. Finally, and in any event, the argument is wrong, both because it rests on flawed and discredited case law, and because it is wholly inconsistent with the policies that underlie the Speech or Debate Clause.

**A.      The JWV Plaintiffs' New Argument Has Been Waived.**

The JWV Plaintiffs' argument that this Court should review responsive documents which the three Members assert are constitutionally privileged has been waived because it was not raised in the JWV Plaintiffs' opening memorandum. *See, e.g.*, *Board of Regents v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996); *Corson and Gruman Co. v. NLRB*, 899 F.2d 47, 50 n.4 (D.C. Cir. 1990); *Public Citizen Health Research Group v. NIH*, 209 F. Supp. 2d 37, 43-44 (D.D.C. 2002).

**B.      The Court Need Not Address the JWV Plaintiffs' New Argument.**

Even if the JWV Plaintiffs' new document-by-document review argument had not been waived, there is no reason for this Court to reach the issue. The only Speech or Debate issues now before the Court are the large legal issues regarding the scope of the Clause, *e.g.*, whether the privilege applies to information gathered by these Members in furtherance of their legislative responsibilities; whether it applies to documents that reflect the Members' legislative motivations; whether the privilege applies to documents that reflect contacts between the Members and the executive branch that are in furtherance of the Members' legislative activities; and the like. *See* Opposition at 24-31. Those are purely legal issues and this Court need not review any particular documents in order to resolve those legal issues.

Once those legal issues are resolved, we will know how to proceed. If it turns out, ultimately, that some class or category of documents the JWV Plaintiffs have subpoenaed is both relevant and not privileged, the Members will produce the documents within that class or category. Certainly there will be no need for the Court to supervise the Members' production of documents should they ultimately be required to produce any.

2

**C.    The JWV Plaintiffs' New Argument Rests on Flawed and Discredited Case Law.**

**1.    *In re Possible Violations of 18 U.S.C. §§ 201, 371*.**

The first case which the JWV Plaintiffs cite, *In re Possible Violations of 18 U.S.C. §§ 201, 371*, involved a grand jury duces tecum subpoena to a congressional aide to then-Congressman Richard Kelly for the Congressman's calendars, schedules, travel records, guest logs, telephone message books and the like.  491 F. Supp. at 212.  The Congressman intervened and moved to quash the subpoena on Speech or Debate, among other,  grounds.  At oral argument, the Congressman abandoned the argument that "if any of the material is privileged everything is privileged."  *Id*. at 213.[1]  With the case in this posture, the District Court held that

> the only remaining question for the court on this issue is the proper procedure for determining what parts of the material fall under the protection of the Speech or Debate Clause.
>
> This court is persuaded by the wisdom of the course followed by the United States Court of Appeals for the Third Circuit in the similar case of Congressman Eilberg.  *In re Grand Jury Investigation*, 587 F.2d 589 (1978).  In the case of Congressman Eilberg, the Third Circuit ordered an in camera hearing where the Congressman would be permitted to indicate the material he considered privileged.  *Id*. at 597. . . .
>
> [I]n the present case Congressman Kelly may submit a[n] . . . index of all material which [he considers privileged]. . . . The government may be present and may contest any claims of privilege in an in camera hearing.

491 F. Supp. at 213-14.  *In re Possible Violations of 18 U.S.C. §§ 201, 371*, in other words, rests entirely on the Third Circuit's decision in *In re Grand Jury Investigation* ("*Eilberg*"), a decision that is fatally flawed on its own terms and long since discredited by this Circuit as well as the Third Circuit.

*Eilberg* was an appeal from a denial of a motion to quash a grand jury subpoena, issued

---

[1]  We assume this refers to the fact that some parts of Congressman Kelley's calendars, schedules, travel records, guest logs and telephone message books may have been  privileged while other parts were not privileged.  In this case, if there are responsive documents that contain some information that is legislative and some information that is not, the Members only assert privilege as to the legislative information.

3

to the Clerk of the House, which sought telephone records of then-Congressman Joshua Eilberg. The Third Circuit acknowledged that the Speech or Debate Clause has a testimonial aspect that is "designed to prevent hostile questioning by the executive branch before a possibly hostile judiciary." *Eilberg*, 587 F.2d at 596. Notwithstanding, it then incorrectly held that the "privilege is at its core a use privilege," *id.*, that is, a privilege only of "nonevidentiary use, not non-disclosure." *Id.* at 597. *See also id.* (The Speech or Debate privilege "is not designed to encourage confidences by maintaining secrecy, for the legislative process in a democracy has only a limited toleration for secrecy.") That holding, in turn, was the sole jurisprudential support for the Court's conclusion that an *in camera* review of documents by the court, in which the government would be permitted to participate, was appropriate. *Id.*[2]

 *Eilberg's* "non-use" notion – on which *In re Possible Violations of 18 U.S.C. §§ 201, 371* in turn rests – is not good law as we now explain.

 a. <u>*Eilberg* Rests on a Flawed Antecedent</u>. The notion that Speech or Debate is only a nonevidentiary use privilege and requires disclosure of privileged documents originated with *In re Grand Jury Proceedings*, 563 F.2d 577 (3rd Cir. 1977) ("*Cianfrani*"). The issue in *Cianfrani* was whether a federal grand jury could obtain documents from *state* legislators and committees. The Third Circuit correctly held the state legislators unprotected by the Speech or Debate Clause, but then went on to recognize a limited "federal common law legislative privilege" for the state legislators. *Id.* at 583. In defining the parameters of that common law privilege, the Third Circuit stated that "[t]he privilege is not one of nondisclosure but of nonevidentiary use." *Id.* at 584. (The reasoning that led to this conclusion is itself flawed. In holding that state

---

 [2] The Third Circuit found the testimonial (*i.e.*, non-disclosure) aspect of the privilege not implicated only because neither the Congressman nor his aides had been subpoenaed, and because the telephone company possessed duplicates of the phone records sought. *Eilberg*, 587 F.2d at 597. *See also In re Grand Jury Subpoena*, 626 F. Supp. 1319, 1328 n.8 (M.D. Pa. 1986) ("*Eilberg* is inapplicable [where] the subpoena is directed to the legislator himself, rather than to a third party. [In that case], testimonial rather than use immunity applies."). Obviously, the facts here are very different: the documents have been subpoenaed directly from the Members and third parties do not possess duplicates of the records sought. Thus, even *Eilberg* itself, flawed as it is, would not justify the relief the JWV Plaintiffs seek here.

legislative immunity permitted disclosure of privileged documents, *Cianfrani* relied on language in *Gravel v. U.S.*, 408 U.S. 606 (1972), *U.S. v. Brewster*, 408 U.S. 501 (1972), and *Doe v. McMillan*, 412 U.S. 306 (1973), which suggested that Speech or Debate is not all encompassing. 563 F.2d at 584. However, those cases held only that when a federal legislator is acting *outside* the legislative sphere, Speech or Debate does not apply. That is, *Gravel*, *Brewster* and *McMillan* were defining the circumstances under which the Speech or Debate Clause would apply at all, not the scope of the Clause when it does apply. Those cases did not hold, or even suggest, that Speech or Debate is anything less than absolute *when it does apply*.)

While *Cianfrani* was not a Speech or Debate case, *Eilberg* picked up its "disclosure/nonevidentiary use" language one year later and erroneously imported it wholesale into the Speech or Debate context.

b. <u>The Third Circuit Has Effectively Gutted *Eilberg*</u>. In 1996, the Justice Department relied on *Eilberg* to argue that it was entitled to documents it had subpoenaed from the House Standards Committee for use in connection with a criminal prosecution of a Member of Congress. The trial court held that the documents were Speech or Debate privileged but, on the strength of *Eilberg*, ordered them produced. The Standards Committee appealed in mid-trial and the Third Circuit summarily reversed in mid-trial:

> (1) The district court has ruled that the documents at issue are [Speech or Debate] protected . . . ;
>
> (2) With this determination made, our decision in <u>In re: Grand Jury Proceedings</u>, 587 F.2d 589 (3d. Cir. 1977 [sic]) ("Eilberg") neither required nor authorized disclosure to the government;
>
> (3) It was error for the district court to require production of the documents at issue to the government . . . .

Order at 1, in *U.S. v. McDade*, No. 96-1508 (3rd Cir. 1996), attached as Exhibit MC 16.

In addition, since *Eilberg* was decided in 1978, the Third Circuit has expressly acknowledged that the non-disclosure component, as well as the immunity component, of the Speech or Debate privilege is "absolute." *See, e.g.*, *In re Grand Jury*, 821 F.2d 946, 953 (3rd Cir. 1987). In effect, these later Third Circuit decisions effectively gutted *Eilberg*.

c. <u>This Circuit Has Rejected *Eilberg*</u>.  The nonevidentiary use notion is also directly at odds with the law of this Circuit which unequivocally blocks *disclosure* of Speech or Debate privileged documents subpoenaed from legislators.  *See, e.g.*, *Brown & Williamson Tobacco v. Williams*, 62 F.3d 408, 419 (D.C. Cir. 1995); *MINPECO v. Conticommodity Services, Inc.,* 844 F.2d 856, 859-60 (D.C. Cir. 1988).  *Brown & Williamson* expressly addressed, and rejected, the *Eilberg* holding:

> [T]he Third Circuit [in *Eilberg*] reasoned that the Speech or Debate Clause privilege "when applied to records . . . is one of nonevidentiary use, not of nondisclosure." . . . Accordingly, it held that although toll records of telephone calls relevant to "legislative acts" could not be used as evidence before the grand jury, the privilege did not bar the U.S. Attorney from taking part in proceedings *in camera* to determine which telephone calls corresponded to "legislative acts." [Brown & Williamson] urges us to join the Third Circuit in holding that even though the Speech or Debate Clause bars the use of documents as *evidence* against Members, it does not privilege them against "discovery" . . . .
>
> We do not accept the proposition that the testimonial immunity of the Speech or Debate Clause only applies when Members or their aides are personally questioned. Documentary evidence can certainly be as revealing as oral communications–even if only indirectly . . . . [I]ndications as to what Congress is looking at provide clues as to what Congress is doing, or might be about to do . . . . We do not share the Third Circuit's conviction that democracy's "limited toleration for secrecy" is inconsistent with an interpretation of the Speech or Debate Clause that would permit Congress to insist on the confidentiality of investigative files. To the extent that the Third Circuit has adopted a special rule for the testimonial use of documents [in *Eilberg*], we therefore disagree. None of the Supreme Court's opinions acknowledges such a distinction. . . . [FN10]
>
>> FN10.  We are not convinced that the Third Circuit would enforce the subpoenas at issue here. Here, Congress is asserting the privilege as to matters that it holds confidential–the content of its files–whereas in [*Eilberg*], the subpoenas sought the production of materials that were also possessed by third parties [*i.e.*, the telephone company].  Moreover, the court's disquiet over congressional claims to secrecy was animated by the countermanding sovereign interest in criminal law enforcement . . . . We doubt whether it would take the same dim view of assertions of the privilege against private parties.

62 F.3d at 420.

d. Eilberg Is Inconsistent with Supreme Court Case Law. Finally, *Eilberg* is patently inconsistent with Supreme Court case law which has "[w]ithout exception . . . read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland v. United States Serviceman's Fund*, 421 U.S. 491, 501 (1975). That case law makes perfectly clear that the Clause is much more than a nonevidentiary use privilege: "The Speech or Debate Clause was designed neither to assure fair trials nor to avoid coercion. Rather, its purpose was to preserve the constitutional structure of separate, coequal, and independent branches of government." *U.S. v. Helstoski*, 442 U.S. 477, 491 (1979). Indeed, the Supreme Court has drawn no distinction between the various components of the privilege (immunity from suit, non-use, non-disclosure). Rather, it has said unequivocally that when it applies, the Speech or Debate privilege is "an absolute bar to interference." *Eastland*, 421 U.S. at 503. *See also* Opposition at 20-24.

## 2. *In re Search of Rayburn House Office Bldg. Room No. 2113*.

The JWV Plaintiffs also rely on Chief Judge Hogan's statement in *In re Search of Rayburn House Office Bldg. Room No. 2113*, 432 F. Supp.2d 100, 115 (D.D.C. 2006), that "[t]he claim . . . that the Constitution does not allow a document-by-document review by the judiciary fails." For the following reasons, that statement also does not justify the JWV Plaintiffs' argument that this Court should conduct some sort of document-by-document review here.

First, Chief Judge Hogan's opinion was issued in response to a Speech or Debate challenge to the Justice Department's historically unprecedented execution of a search warrant – authorized by the Chief Judge himself – on Louisiana Congressman William Jefferson's congressional office. In that case, the Department seized thousands of pages of the Congressman's congressional records, including thousands of pages of legislative records, before the Congressman had any opportunity to review those records for privilege. Every aspect of that first-of-its-kind ruling is currently the subject of a very vigorous appeal. *See U.S. v. Rayburn*

*House Office Bldg. Room 2113*, No. 06-3105 (D.C. Cir.).[3]  The D.C. Circuit heard argument on May 15, 2007, and the matter is now pending.  Accordingly, until that appeal is resolved, the courts should not rely on the District Court's opinion.

Second, Chief Judge Hogan rested his statement about the propriety of document-by-document review on *In re Possible Violations of 18 U.S.C. §§ 201, 371*, which is flawed and discredited for all the reasons given above.  He also cited *Benford v. American Broadcasting Co.*, 98 F.R.D. 42, 45 (D. Md. 1983), which said, in the context of a Speech or Debate challenge to a duces tecum subpoena issued to the Clerk of the House, that the district court could review congressional documents "to determine whether [they] have accurately characterized their content."  *Id*. at 45 n.2.  *Benford* is also a flawed and discredited authority because, like *In re Possible Violations of 18 U.S.C. §§ 201, 371*, it specifically rests on *Eilberg's* holding that "'the privilege when applied to records . . . is one of nonevidentiary use, not of non-disclosure.'" 98 F.R.D. at 46 (quoting *Eilberg*, 587 F.2d at 597).  *Benford* is also inconsistent with *Brown & Williamson*, discussed above, which is binding precedent in this Circuit.  And finally, *Benford* is even inconsistent with the law of its own circuit.  *See U.S. v. Dowdy*, 479 F.2d 213, 226 (4th Cir. 1973) (Speech or Debate Clause "forbids inquiry into acts which are purportedly or apparently legislative, even to determine if they are legislative in fact.  Once it [i]s determined . . . that the legislative function . . . was *apparently* being performed, the propriety and the motivation for the actions taken, as well as the detail of the acts performed, are immune from judicial inquiry.") (emphasis in original).[4]

---

[3]  The distinguished amici who have filed in support of reversal include former judge, Congressman and White House Counsel Abner Mikva; a bipartisan group of former House leaders (former Speakers Newt Gingrich and Tom Foley, and former Minority Leader Bob Michel); a bipartisan group of former senior House committee and leadership staff; and a group of congressional scholars and former congressional counsel.

[4]  The *Benford* ruling is an extremely weak reed for yet an another reason.  The Clerk in that case sought appellate review of the district court's ruling.  *See* Brief for Appellant at 43-48, in *In Re Guthrie*, No. 83-1653 (4th Cir.) (filed Oct. 11, 1983), attached as Exhibit MC 17.  However,

(continued...)

Finally, as noted above, *Rayburn House Office Bldg. Room 2113* arose in the unique context of a Fourth Amendment search and seizure. Even if it turns out, after the appeals process has run its course, that a document-by-document review by the courts may sometimes be appropriate in the search and seizure context – which, after all, may entail the seizure of records without the Member's having a prior opportunity to review them for privilege – that still would not make a document-by-document review appropriate in the context of garden variety duces tecum subpoenas such as the ones at issue here.

*        *        *

In short, the JWV Plaintiffs' new argument that this Court should review, on a document-by-document basis, those responsive documents which the three Members assert are constitutionally privileged has no valid case law support.

### D.    The JWV Plaintiffs' New Argument Is Inconsistent with the Policies Underlying the Speech or Debate Clause.

One purpose of the Speech or Debate Clause is to "prevent intimidation of legislators by the Executive *and accountability before a possibly hostile judiciary*. . . ." *Eastland*, 421 U.S. at 502 (quoting *Gravel*, 408 U.S. at 617) (emphasis added). Because the Speech or Debate Clause is designed to protect the legislative branch from judicial interference – as well as from interference by the executive branch and private parties –  the courts have taken care to circumscribe the scope of judicial review to the large question of what constitutes "legislative activity." *Brown & Williamson*, 62 F.3d at 415 ("judiciary cannot avoid determining what are the outer limits of legitimate legislative process").

In this case, for example, the Court must determine whether certain documents the Members created or gathered for the purpose of formulating legislation, and certain

---

[4](...continued)
the Fourth Circuit did not reach that issue because it held the subpoena to the Clerk invalid on other grounds. *See Guthrie v. American Broadcasting Co.*, 733 F.2d 634 (4th Cir. 1984). Because it managed to escape appellate review – and completely aside from its analytical flaws – the *Benford* ruling is a very dubious precedent.

communications in connection with a particular legislative initiative, constitute "legislative activities."  Opposition at 24-31.  The Court can make that determination on the basis of the language in the subpoenas themselves, the Members' representations about the categories of documents they contend are privileged, and the legal arguments advanced by both sides.  That is entirely appropriate and consistent with the Constitution, and is the procedure under which federal courts routinely resolve Speech or Debate issues.

What is not appropriate, and not consistent with the Constitution, is for the Court – particularly in the context of a garden variety duces tecum subpoena – to conduct a document-by-document review (or to compel the compilation of a privilege log for that matter) that would necessarily entail a disclosure by the Members of some of the very information they assert is absolutely privileged.  That is what the Supreme Court meant when it said that "the guarantees of [the Speech or Debate Clause] are vitally important to our system of government and . . . are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979).

In addition, there is an enormous practical problem inherent in the notion that the Court should review responsive records on a document-by-document basis:  the Court is not well-equipped to determine whether particular documents are Speech or Debate-protected or not.  This is because the Speech or Debate privilege is not communications-based (like most common law privileges such as the attorney-client privilege).  It is activity-based.  This means that it frequently is impossible to tell from the face of a document whether or not it is legislative.  In order to accurately determine whether a document is legislative (and therefore protected), one must know for what purpose the document was created or obtained, how it has been or will be used, what personal legislative initiatives a Member is currently pursuing, what future legislative initiatives a Member is contemplating pursuing, what oversight matters or investigations a Member is involved in, and so forth.  Without that information – which can only be obtained from the Member (or from his or her staff) – accurate privilege determinations cannot be made.  But Members cannot be compelled to disclose this information because such information is itself

Speech or Debate protected.  *See, e.g.*, *Eastland*, 421 U.S. at 508-509; *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983); *Dowdy*, 479 F.2d at 226.[5]

In short, the kind of review the JWV Plaintiffs appear to advocate would create many more constitutional problems than it would solve.

Respectfully submitted,

GERALDINE R. GENNET, General Counsel
s/Kerry W. Kircher
KERRY W. KIRCHER, Deputy General Counsel
CHRISTINE DAVENPORT, Assistant Counsel
JOHN FILAMOR, Assistant Counsel

Office of General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515
202/225-9700 (telephone)
E-mail: kerry.kircher@mail.house.gov

July 11, 2007

Counsel for Congressmen Darrell E. Issa, Brian P. Bilbray and Duncan Hunter

---

[5]  Even House Counsel which, along with Senate Legal Counsel, deals with Speech or Debate matters on an almost daily basis and has litigated numerous Speech or Debate cases, frequently cannot tell, merely by looking at a document, whether it is privileged.  We have to ask questions, sometimes lots of them.  Recently, for example, House Counsel represented a Member who, because of a personal family tragedy, had developed a legislative interest in a particular drug.  Over the course of several years, he accumulated a large volume of information about the drug including newspaper reports, magazine and medical journal articles, regulatory materials, memoranda, email traffic, judicial decisions and the like.  When the drug's manufacturer subpoenaed all of the Congressman's records that related to the drug, we spent a significant amount of time questioning the Member and his staff in order to get a handle on what was "legislative," and therefore privileged, and what was not.  We had to proceed document by document, in consultation with the Member and his staff.  Ultimately, we determined that some responsive, relevant materials were not privileged – *e.g.*, press releases and communications with federal regulatory agencies unrelated to the legislative process – and those were produced.  The remaining responsive materials – *e.g.*, newspaper reports, magazine and medical journal articles, regulatory materials, memoranda and e-mail traffic – were withheld as legislative because they related to the Congressman's efforts to inform himself about the drug for the ultimate purpose of preparing legislation.  A magistrate judge quashed the drug manufacturer's subpoena as to those records on Speech or Debate grounds.  *See* Order in *Stupak v. Hoffman-LaRoche, Inc.*, No. 8:05-cv-926-T-30TBM (M.D. Fla. April 28, 2006), attached to Opposition as Exhibit MC 12.

**CERTIFICATE OF SERVICE**

I certify that on July 11, 2007, I served the foregoing Surreply of Congressmen Darrell E. Issa, Brian P. Bilbray and Duncan Hunter to Plaintiffs' Reply Memorandum in Support of Motion to Compel Production of Documents Responsive to Subpoenas through the electronic case filing system, and by .pdf email on the following:

> Jonathan H Siegelbaum, Esq.
> Wilmer Cutler Pickering Hale and Dorr
> 1875 Pennsylvania Ave., N.W.
> Washington, D.C.   20006
> Email: jonathan.siegelbaum@wilmerhale.com
>
> Jennifer Allaire
> U.S. Department of Justice, ENRD
> Natural Resources Section
> 601 D Street, NW
> P.O. Box 663
> Washington, D.C.   20004-0663
> Email: jennifer.allaire@usdoj.gov
>
> Heide Herrmann
> U.S. Department of Justice, ENRD
> Natural Resources Section
> 601 D Street, NW
> P.O. Box 663
> Washington, D.C.   20044-0663
> Email: Heide.Herrmann@usdoj.gov

> s/Kerry W. Kircher
> Kerry W. Kircher
> E-mail: kerry.kircher@mail.house.gov

12

**MC 16**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO.  96-1508

UNITED STATES OF AMERICA,

Appellee
v.

JOSEPH M. McDADE,

Defendant

CUSTODIAN OF RECORDS,
COMMITTEE ON STANDARDS OF OFFICIAL CONDUCT,
UNITED STATES HOUSE OF REPRESENTATIVES,
Appellant

ON APPEAL FROM THE ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA DIRECTING THE PRODUCTION OF RECORDS
PURSUANT TO FED.R.CRIM.P. 17(c), AT CRIMINAL NO. 92-249

ARGUED:  July 12, 1996
BEFORE:  Becker, Stapleton and Greenberg, <u>Circuit Judges</u>.

ORDER

It appearing to the Court that:

(1).  The district court has ruled that the documents at issue are protected by the privilege conferred by the Speech or Debate Clause, and that ruling has not been challenged before us;

(2).  With this determination made, our decision in <u>In re: Grand Jury Proceedings</u>, 587 F.2d 589 (3d. Cir. 1977) ("<u>Eilberg</u>") neither required nor authorized disclosure to the government;

(3).  It was error for the district court to require production of the documents at issue to the government at the time of the district court's order;

It is hereby ORDERED that the portions of the district court's order of June 5, 1996 appealed from are VACATED.*

BY THE COURT:

_____
Circuit Judge

DATED: JUL 1 2 1996

---

*.  If in the course of future proceedings, the district court determines that a legitimate issue exists as to whether there has been a valid waiver of the Committee's privilege, nothing here said is intended to preclude the district court from ordering the documents at issue produced for its inspection in camera in connection with the resolution of that issue.

**MC 17**

*9/11/83*

## No. 83–1653

## In the United States Court of Appeals for the Fourth Circuit

In Re: Benjamin J. Guthrie, clerk
U.S. House of Representatives

*ON APPEAL FROM AN ADJUDICATION OF CIVIL CONTEMPT*
*IN THE UNITED STATES DISTRICT COURT FOR*
*THE DISTRICT OF MARYLAND*

### BRIEF FOR APPELLANT

STANLEY M. BRAND,
*General Counsel to the Clerk,*

STEVEN R. ROSS,
*Deputy Counsel to the Clerk.*

MICHAEL L. MURRAY,
*Assistant Counsel to the Clerk,*
*U.S. House of Representatives,*
*H 105, The Capitol,*
*Washington, D.C.   20515*
*(202) 225-7000*

Of Counsel:
EUGENE GRESSMAN,
*University of North Carolina,*
*School of Law,*
*Chapel Hill, North Carolina   27514.*

### STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the District Court for Maryland has "inherent power" to order a non-party, by service outside the territorial limits of the State of Maryland, to produce records for inspection and copying by a private party plaintiff in a civil damage action.

2. Whether the House of Representatives has constitutional authority, under the Publications Clause and the Speech or Debate Clause, to enact rules and regulations to protect legislative or institutional files and records, particularly where access is sought in the course of private civil litigation by a subpoena addressed to the Clerk of the House of Representatives.

3. Whether the legislative records of the House of Representatives are protected from compelled disclosure by the Speech or Debate Clause.

4. Whether the Clerk of the House of Representatives can be held in civil contempt and fined $500 per day for having obeyed House Resolution 176, directing him not to produce or permit access to privileged legislative records as requested in a judicial subpoena.

### STATEMENT OF THE CASE

#### NATURE OF CASE, COURSE OF PROCEEDINGS AND DISPOSITION BELOW

This case involves an adjudication of civil contempt of the Clerk of the United States House of Representatives and the imposition of a $500 a day fine for noncompliance with an order issued by the United States District Court for Maryland, to permit records of the House of Representatives to be examined and copied by a civil litigant in *George H. Benford* v. *American Broadcasting Companies,* Civ. Action No. N-79-2386. On August 22, 1983, this court, per Circuit Judge Russell, stayed the June 24, 1983 order of the district court adjudging the Clerk in contempt and imposing a $500 a day contempt fine.

The subpoena to the Clerk arose in the course of a civil damages action brought against congressional aides and

(1)



2

ABC by Benford alleging that the taping and airing of a sales meeting arranged by the aides violated his legal rights. *See Benford v. American Broadcasting Companies,* 502 F.Supp. 1148 (D.Md. 1981) *aff'd.* 661 F.2d 917 (4th Cir.) [table] *cert. denied sub. nom. Holton v. Benford,* 454 U.S. 1060 (1981); *Benford v. American Broadcasting Companies,* 554 F.Supp. 145 (D.Md. 1982), *appeal dismissed* (4th Cir. 1982) *cert. denied sub nom. Holton v. Benford,* ——— U.S.L.W. ——— (U.S., Oct. 3, 1983); *Benford v. American Broadcasting Companies,* Misc. No. 82–35 (D.D.C. 1982).

As part of efforts to prove the allegations in the complaint, Benford commenced discovery efforts and served upon congressional defendants a request for production of documents. Request For Production. J.A. 14.[1] Frustrated after being informed that all records had been transmitted to the Clerk for archiving under applicable House rules, the plaintiff directed a subpoena to the Clerk for the records of the investigation.

The Select Committee on Aging has, and had during all times relevant to the claims-in-suit, jurisdiction over the study and review of the problems of the older American, including but not limited to health and welfare. H.R. Rule X,cl.6(i)(1), Rules of the House of Representatives, § 702, *reprinted in* Constitution, Jefferson's Manual and Rules of the House of Representatives, H.R. Doc. No. 271, 97th Cong., 2d Sess. 404 (1983).

In 1978, the Select Committee commenced an "in-depth investigation into alleged abuses in the sale of medicare supplementary health insurance policies," including cancer insurance, *Abuses In The Sale of Cancer Insurance to The Elderly In Supplementation of Medicare; A National Scandal, A Staff Study by the House Select Committee on Aging,* Comm. Pub. No. 160, 95th Cong., 2d Sess. iii (Comm. Print 1978). The Select Committee published the

---

[1] References to the Joint Appendix, in which the Appellant has printed every document designated as part of the district court record in this case, will be abbreviated J.A. —

3

findings and conclusions of its investigation, *Cancer Insurance: Exploiting Fear for Profit (An Examination of Dread Disease Insurance)*, Comm. Pub. No. 202, 96th Cong., 2d Sess. (1980), and held hearings on the subject of dread disease insurance, which were also published. *Abuses in the Sale of Cancer Insurance to the Elderly: Hearings Before the House Select Comm. on Aging,* 95th Cong., 2d Sess. (1979).[2]

Under applicable rules and precedents, the Select Committee retired the records generated during the investigation to the Clerk at the expiration of the 95th Congress. H.R. Rule XXXVI, Rules of the House of Representatives, § 932, H.R. Doc. No. 271 *supra*, at 654.[3]

The rules further provide the "[a]ll committee hearings, records, data, charts and files shall be the property of the House." H.R. Rule XI, cl. 2(e) (2), *Rules of the House of Representatives, §706c, H.R. Doc. No. 271 supra, at 411.*

The records of the Select Committee relevant to the conduct of its investigation into supplemental health insurance comprise approximately 70 linear shelf feet of storage space. Affidavit of W. Raymond Colley, ¶9 (January 25, 1983) J.A. 220.

---

[2] These published reports and hearing were lodged for the convenience of the court with the clerk of the court of appeals in connection with the earlier appeal of the congressional defendants in *Benford* v. *American Broadcasting Co.,* No. 81–1200 (4th Cir.)

[3] The rule provides that the "clerks of the several committees of the House shall, within three days after final adjournment of a Congress, deliver to the Clerk of the House all bills, joint resolutions, petitions and other papers referred to the committee together with *all evidence* taken by such committee under the order of the House during the said Congress and *not reported to the House* and thereafter "shall transfer them to the General Services Administration for preservation subject to the order of the House." The records maintained under these provisions are closed for a fifty year period, unless the records have previously been made public by the House or the records have previously been made public by the House or the Clerk determines their release after 50 years would be detrimental to the public interest. H.R. Res. 288, 85th Cong., 1st Sess., 99 Cong. Rec. 6641 (1953).



4

### 1. Proceedings In The District of Columbia

On or about December 8, 1981 plaintiff, in the action entitled *George H. Benford* v. *American Broadcasting Companies, Inc., et al.*, Civil Action No. N–79–2386 (D.Md.), caused a Deposition Subpoena To Testify or Produce Documents or Things to be delivered to the offices of the Clerk of the United States House of Representatives, with a return date of December 23, 1981. J.A. 75. The subpoena was issued under the foreign deposition provisions of the Federal Rules of Civil Procedure from the United States District Court for the District of Columbia.

The subpoena called for production, at Benford's counsel's District of Columbia offices, of extensive documentation concerning the Select Committee's investigation and communications with ABC.

On December 23, 1981 a deposition was held in the District of Columbia at which a representative of the Clerk appeared, delivered certain documents called for by the subpoena and answered questions concerning the maintenance of records generated by the Select Committee. Deposition of Steven R. Ross. J.A. 116–217.

Following the deposition, Benford filed a motion to enforce compliance with the subpoena, which the Clerk of the House opposed on the grounds that most of the documents subpoenaed were protected by the speech or debate clause in that they reflected or related to the Select Committee's investigation.

Subsequent to the motion to enforce in the District of Columbia, Benford withdrew the subpoena representing that "we do plan to redraft the subpoena in order to more sharply to hone in on matters which were confidential or not privileged." Tr. of District of Columbia Hearing at 3, *George H. Benford* v. *American Broadcasting Co., Inc.*, Misc. No. 82–35 (D.D.C., March 16, 1982) J.A. 86.

The Plaintiff further represented that "the court in which this action is in fact brought and which has cognizance of the whole matter would have jurisdiction over this part of the discovery proceedings, that it would be appropriate to issue a properly narrowed subpoena by-

5

passing as many of the privilege issues as possible . . ."
J.A. 86–87. It was further agreed and stipulated that any
communications evidencing arrangements to disseminate
or disseminations to ABC from the Select Committee
would be produced and the proceedings in the District of
Columbia temporarily ended with an order embodying
the stipulation.[4]

### 2. The Maryland Subpoena

Thereafter, on or about March 22, 1982 Plaintiff caused
another subpoena *duces tecum to* be issued from the Dis-
trict Court for Maryland requiring production of substan-
tially the same records subpoenaed in the District of Co-
lumbia. The records subpoenaed included the following:

(1) all documents relating or referring to George H.
Benford or American Family Life Assurance Compa-
ny of Columbus, Georgia;

(2) all documents constituting or referring to com-
munications between the defendants, or between the
defendants and any other person, pertaining in any
manner to Benford, American Family or any defend-
ant;

(3) all documents constituting communications be-
tween congressional employees and any employee or
agent of American Broadcasting Companies;

(4) reports, memoranda, notes or any communica-
tions by Kathleen Gardner during 1978 and 1979 per-
taining to her undercover employment by Benford;

(5) the "investigative plan" of the Select Commit-
tee;

(6) the names of persons who worked as "undercov-
er" sales trainees with several dozen insurance com-
panies, and reports prepared by these persons;

(7) complaints received by the Select Committee
from elderly citizens concerning abusive sales prac-
tices;

---

[4] Despite the stipulation, Benford moved for contempt in the District
of Columbia when the Clerk informed his counsel that no further doc-
uments evidencing "disseminations" to ABC could be located.



6

(8) health insurance policies received by the Select Committee and the evaluation and analyses of these policies, and the names of the persons who performed the analysis;

(9) all documents prepared by or on behalf of a Member of the House authorizing the staff to arrange the November 3, 1978 sales meeting;

(10) questionnaires and requests directed to the Library of Congress, Postmaster General, Federal Trade Commission, and General Accounting Office for information on supplemental health insurance and the replies;

(11) requests for information sent to insurance carriers and regulators concerning cancer insurance, and to senior citizen groups and the replies;

(12) all documents and communications relating "in any way to the events described in the pleadings in the above captioned action and the matters in controversy not produced in response to any of the foregoing items number 1 through 20."

(13) documents or communications constituting authorization for the arrangements to disseminate the November 3, 1978 sales meeting to defendant ABC.

Attachment to Subpoena. J.A. 68–73.

The "pleadings in the above captioned action" refer to and allege that the Select Committee conducted hearings, Amended Complaint ¶6(k), *George H. Benford* v. *American Broadcasting Companies,* Civ. Action No. N–79–2386, and so the records relating to the conduct of the hearings are presumably within the scope of the subpoena.

The subpoena called for the Clerk to bring the records to "the Holiday Inn, 5520 Wisconsin Avenue, Chevy Chase, Md.* (room is in Mr. Sharp's name, and number will be available at front desk April 13th)." J.A. 66.

The Clerk notified the Speaker of the receipt of the subpoena and the subpoena was laid before the House pursuant to applicable procedures governing response to subpoenas to Members, officers and employees for testi-



7

mony or documents relating to the performance of official functions. H.R. Rule L(50), *Rules of the House of Representatives*, § 946, H.R. Doc. No. 271, *supra*, at 703.

In response to the Clerk's notification, the Speaker and joint leadership of the House, who exercise supervisory authority over officers of the House, instructed the Clerk not to produce the records based on the "breadth and intrusiveness" of the subpoena and the unbroken House precedents forbidding the Clerk from physically removing House records from the Capitol. 127 Cong. Rec. H1328 (daily ed. March 31, 1982).

On April 13, 1982 the Clerk moved to quash the subpoena on the ground that the Maryland court lacked authority to issue a subpoena outside the territorial limits of the state in which it sits and that Rule 45(d) of the Federal *Rules of Civil Procedure* provides *no basis for extra-territorial jurisdiction* over a non-party witness.

Prior to a ruling on the Clerk's motion to quash, the District Court entered a stay of discovery in the case with respect to congressional defendants and the Clerk pending the consideration of the impact of the then recently issued decision in *Nixon* v. *Fitzgerald*, — U.S. —, 102 S. Ct. 2690 (1982) and *Harlow* v. *Fitzgerald*, — U.S., —, 102 S. Ct. 2727 (1982) on the issue of the qualified immunity of the congressional defendants. *Benford* v. *American Broadcasting Companies*, 554 F.Supp. 145, 148 (D.Md. 1982); 98 F.R.D. 40, 41 n.2 (D.Md. 1983).

On December 22, 1982 the District Court lifted the stay of discovery when it denied the congressional defendants claim of qualified immunity. 554 F.Supp. at 156.

Following the dissolution of the stay, and after a hearing was held on the Clerk's motion to quash, the District Court denied the motion. J.A. 385. The Clerk contended, in reliance on Professor Moore, that Rule 45(d)(2), Fed.R.Civ.P., "does not deal with the place at which the subpoena may be served. This [is] left governed by the general principles of territorial jurisdiction. Since service of the subpoena to take a deposition is unaided by the 100



8

mile provision of Rule 45(c) the subpoena must be served within the district." 5A J. Moore, Moore's Federal Practice ¶ 45.06[1] n.6, (2d ed. 1977) *citing Application of Johnson & Johnson,* 59 F.R.D. 174 (D. Del. 1973).

The district court determined that "[n]othing [Professor Moore] says restricts, nor could it, this Court's *inherent power* to serve a subpoena on a witness for deposition who works or resides at a place within 40 miles of this court." 98 F.R.D. at 41. (emphasis added) J.A. 383.

The district court instead found that "the logic of *SCM Corporation* v. *Xerox,* 76 F.R.D. 214 (D. Conn. 1977) would be best followed" because of "the need for uniformity." *Id.,* 98 F.R.D. at 42. J.A. 384.[5]

The order accompanying the decision however, amended the deposition subpoena in two material respects. First, the District Court ordered part of the subpoena striken, specifically "[a]ll documents relating or referring in any manner to Plaintiff George H. Benford (hereinafter called "Benford") or American Family Life Assurance Company of Columbus, Georgia (hereinafter called "American Family"); secondly, the District Court did not order the Clerk to carry the House's records to an undisclosed hotel room in Chevy Chase, but rather to arrange for a convenient time, before April 30, 1983 for "counsel for plaintiff to inspect and copy, at the office of the movant [the Clerk] or any other convenient place he so designates . . . all other documents specified in plaintiff's Attachment to Subpoena *Duces Tecum* beginning at Section C on page 4 through and including Section D which ends at the bottom of page 6." 98 F.R.D. at 42. J.A. 385–386.

The district court order converted, *sua sponte,* deposition subpoena into a "request for production of docu-

---

[5] *SCM Corporation* v. *Xerox, supra,* dealt not with the issue of the jurisdiction of the district court to issue subpoenas beyond its boundaries, but with "whether the 100-mile provision of Fed.R.Civ.P. 32(a)(3)(B) governing the use of deposition at trial is measured along a straight line on a map or along the ordinary, usual, and shortest route of public travel." 76 F.R.D. 214.

9

ments", 98 F.R.D. at 46, J.A. 385 for it simply required that the Clerk arrange for inspection and copying. Of course, the Clerk, as a non-party, was never served with a request for production of documents, as a party could be, pursuant to Rule 34, Fed.R.Civ.P.

On February 25, 1983 following denial of the Clerk's motion to quash and before the April 30, 1983 inspection date ordered by the district court, the Select Committee on Aging, through its Chairman, moved to intervene to obtain a protective order for the records delivered by the Select Committee to the Clerk to "insure that the documents now under subpoena are not produced in contravention of the Speech or Debate Clause." Affidavit of Edward R. Roybal, Chairman, Select Committee on Aging. J.A. 456. The Select Committee moved to intervene because it would be "powerless to avert the mischief" of the order to produce to the Clerk, *Perlman v. United States,* 247 U.S. 7, 13 (1918), and to avoid relying upon the Clerk of the House to risk contempt to protect against disclosure of records generated during its investigation. *Gravel v. United States,* 408 U.S. 606, 609 n.1 (1972).[6]

The district court heard the motion to intervene on April 8, 1983 and denied the Select Committee's effort to litigate the validity of the subpoena without resort to placing the Clerk in contempt. Tr. of Hearing on Motion of Select Committee To Intervene at 41. (April 8, 1983) J.A. 555.

Subsequent to the denial of the Select Committee's intervention, on April 28, 1983 the House of Representatives adopted a privileged resolution introduced by Representative Foley asserting the constitutional prerogative of the House to protect its records from disclosure to a civil

---

[6] The House of Representatives for the 98th Congress convened on January 3, 1983. 129 Cong. Rec. H3 (daily ed. Jan. 3, 1983). However, the committees of the House were not organized until four (4) weeks later and Chairman Roybal was appointed on February 8, 1983. 129 Cong. Rec. H381 (daily ed. Feb. 8, 1983). The Select Committee moved as soon as practicable thereafter to intervene.



10

litigant. H.R. Res. 176, 98th Cong., 1st Sess., 129 Cong. Rec. H2456 (daily ed. April 28, 1983). J.A. 499.

As the sponsor of the House resolution explained, "the circumstances of the case have now reached a point at which it is imperative to protect its own prerogatives, including the essential privilege of speech and debate . . . [b]ecause the court, in this case, the U.S. Court for Maryland, sitting in Baltimore, has declined to permit the intervention of the House in order to present issues of privilege and has insisted on the production of documents, as has been more recently ordered, their examination at the Capitol by the plaintiff, it is felt imperative that the House instruct the Clerk not to comply with the subpoena." *Id.* at H2451.

The resolution was adopted by a recorded vote of 386 yeas to 22 nays, and a copy was ordered transmitted by the Clerk of the House to the District Court.

On May 2, 1983 the District Court issued a memorandum opinion confirming denial of the Select Committee's intervention and stated as the basis for the denial: (1) the failure of the Clerk to indicate with "any particularity" the documents subject to privilege, relying on *Vaughn* v. *Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (Freedom of Information Act); and (2) because no Member of the Select Committee "is a defendant in this suit, and no member has been questioned," the speech or debate clause was not implicated. *Benford* v. *American Broadcasting Companies*, 98 F.R.D. 42, 46 (D.Md. 1983). J.A. 509. The district court also determined that the Select Committee's interests were adequately being represented by the existing parties. *Id.*, 98 F.R.D. at 47. J.A. 511.

The district court rejected the Select Committee's claim that the subpoena itself provided sufficient specificity to rule on the claim of privilege, *id.*, 98 F.R.D. at 45 n.2, J.A. 507, and also concluded that the documents had to be produced because of their relevancy to congressional defendants immunity claim. "Unless the congressional defendants are willing to drop their immunity claim altogether,

11

at a minimum this Court should examine the relevant documents supporting the claim, in camera, to determine whether the congressional defendants have accurately characterized their content." *Id.*

Finally, the district court found that the speech or debate privilege would apply at most only at trial should Benford attempt to introduce documents as evidence. *Id.*, 98 F.R.D. at 46. J.A. 509–510.

The district court noted passage of H.R. Res. 176 but concluded that "the resolution is not germane to the principle point of this opinion, which is this Court's denial of the Select Committee's motion to intervene for the reasons stated herein." *Id.*, 98 F.R.D. at 47. J.A. 512.

### 3. Contempt Proceedings Against The Clerk

On June 14, 1983, nearly six (6) weeks after the passage of H.R. Res. 176, upon Benford's *ex parte* application, the district court issued a show cause order why the clerk should not be held in contempt of court and fined $200 a day for failure to permit inspection and copying of the records and set June 24, 1983 as the date for a hearing on the show cause order. J.A. 589.

On June 24, 1983, the Clerk, through counsel, contested the show cause order on four grounds: (1) that the Clerk did not control the records of the House and was legally unable to comply; (2) that the House had invoked its rights under the secrecy exception to the Publication Clause, U.S. Const., art. I, § 5, cl. 2 to determine which of its records to publish; (3) that the Speech or Debate Clause prevented a civil litigant from obtaining House records evidencing the conduct of a legislative investigation; and (4) that the district court for Maryland had no authority to issue a subpoena outside the district to order a non-party to produce records for inspection in another district.

At the hearing, the district court rejected each of the Clerk's defenses, adjudged the Clerk in contempt and imposed a $500 a day fine but stayed the contempt fine "until July 8, 1983 to give the Clerk the opportunity to



12

either appeal this decision, produce the documents requested, or file appropriate objections thereto . . . [such] stay . . . [to] continue so long as a duly filed motion is under consideration or an appeal remains undecided . . ." J.A. 614.

The district court merged the issue being litigated in the main action with the subpoena to the non-party Clerk of the House, as it had previously in considering the Select Committee's intervention. "Let me ask you again, counselor, if you are representing the congressional aides in this matter and they asserted, as you admit, and I pointed out the question of qualified privilege, don't you think that the plaintiff is entitled to determine who authorized these people to do what they did?" Tr. of Show Cause Hearing at 18, lines 14–19. J.A. 634.

The Court stated in its June 24, 1983 contempt order that "it has not received the Clerk's Speech or Debate claims, and has not had an opportunity to determine if they have any merit." June 24, 1983 Memorandum and Order. J.A. 613–14. The Court specifically invited the Clerk, who had not previously asserted speech or debate, to proffer any such claim to the Court: "I don't think there is any question that some of the records that they sought are probably subject to the immunity of speech or debate, or other matters and should not be disgorged . . . . Tr. of Show Cause Hearing at 20, lines 7–10. J.A. 636. The clerk exercised the option held out by the district court by filing "objections," grounded *inter alia* in speech or debate, to avail himself of the district court's express invitation and in accordance with the district court's June 24, 1983 order, on Friday, July 8, 1983 the Clerk filed specific objections to the subpoena, together with a motion for reconsideration and a twelve (12) page memorandum of points and authorities. One day later, on Saturday, July 9, 1983 the District Court denied the

13

motion for reconsideration, found the objections insufficient and lifted the stay of the contempt fine.[7]

In a scant two page memorandum, without extended discussion of the important constitutional objections lodged by the Clerk, the district court denied the objections and the motion for reconsideration and found that the objections lacked specificity or were "merely repetitive." The Clerk was thus placed in an inextricable dilemma. Having sought recourse to an invitation by the district court to object on speech or debate grounds because the court "had not received the Clerk's speech or debate claims," the Clerk was told the claims he had never made were "repetitive." J.A. 686.

The Court declined to examine any claim asserted and lifted the stay of the contempt fine, revoking its earlier decision to grant, in effect, an indeterminate stay "so long as [that] appeal remains undecided."

The Clerk filed a timely notice of appeal on July 12, 1983 and again requested a stay of the contempt fine on July 14, 1983. The district court denied the stay on July 16, 1983 and on July 27, 1983 the Clerk sought a stay from the court of appeals, which was granted on August 22, 1983 as to "its enforcement, [but] not in its accumulation guise." *In re: Benjamin J. Guthrie, Clerk, U.S. House of Representatives,* No. 83-1653 (4th Cir., issued Aug. 22, 1983).

### SUMMARY OF ARGUMENT

This has become an inter-Branch confrontation, a confrontation between the Judicial and Legislative Branches that need not have occurred.

The District Court below has sanctioned, at the instance of a private litigant, a broad incursion into the leg-

---

[7] After considerable good faith efforts by the Clerk to meet the July 8, 1983 deadline imposed by the district court, despite the intervention of the July 4 congressional recess, 129 Cong. Rec. H4893 (daily ed. June 30, 1983), after the Clerk's filing the district court's chambers announced that the court would rule in *"hasty* due course." The Evening Sun, July 9, 1983 at 20, Col. 1

43

the
ibi-
.90,
)m-
ind
3 of
use

ι is
the
)cu-

nes
un-
the
tee
ged

Cir.

uld
illy
the

the
the
! v.
ury
the
)vi-
ing
)m-
the
ons
of
or
not
;et-

ide

"communications between the [Member] and [their] aide[s]" *Gravel* v. *United States,* 408 U.S. at 628–29, relating to the Select Committee's undercover investigation of, and hearings and reports on, the sale of supplemental health insurance. For example, the subpoena demands all documents "prepared by or on behalf of a Member of the House purporting directly or indirectly to authorize any one of all the Congressional employee defendants to arrange, participate in, prepare or assist in any manner in the sales meeting of November 3, 1978 in suit," Attachment to Subpoena ¶B8. J.A. 36, as well as "reports, memoranda, notes or notation, or any communication by Kathleen Gardner during 1978 and 1979 pertaining to her activities and/or information obtained while employed by Plaintiff Benford . . . , ¶A.6. J.A. 35.

"This Court has reiterated the central importance of the clause for preventing intrusion by executive and judiciary into the legislative sphere." *United States* v. *Helstoski,* 442 U.S. at 491. The wholesale "intrusion" occasioned by compliance with Benford's subpoena should be prevented by firm application of the Clause.

**VI. THE SPEECH OR DEBATE CLAUSE PROTECTS RECORDS OF THE HOUSE FROM THE DISCOVERY DEMANDS OF A CIVIL LITIGANT**

In denying the Select Committee's motion to intervene and later in adjudging the Clerk in contempt, the district court held that before a court could review a speech or debate claim, the Clerk would be required to submit a "detailed index" of the records subpoenaed and ultimately produce them for *in camera* inspection. *Benford* v. *American Broadcasting Companies,* 98 F.R.D. at 45. J.A. 611. This conclusion, that the Clause must be breached to be applied, is unsupported by the weight of caselaw or logic.

The district court flatly refused to entertain the speech or debate claim on the behalf of either the Select Committee or the Clerk absent indexing or in camera inspection. For this proposition, the court relied upon *Vaughn* v. *Rosen,* 484 F.2d 820 (D.C. Cir. 1973) *cert. denied,* 415

44

U.S. 977 (1974), a case under the Freedom of Information Act, totally inapposite to the textual framework of the Clause. The Clerk submits that the district court committed plain error in applying a *statutorily* created scheme governing disclosure of *agency* documents (from which Congress has exempted itself, 5 U.S.C. § 551(1)(A)), to a *constitutional* claim of the legislature based on the speech or debate clause. The district court also erred when it concluded that because the congressional defendants have claimed immunity in the main action, the House of Representatives, through the Clerk, must disgorge all the internal documents generated during the investigation.[14] This remarkable theory of "waiver" would force the House to permit civil litigants to peruse its documents at will every time an aide was sued for purportedly illegal acts. It flies in the face of unbroken precedent that allegations of extra-legislative activity do not subject legislative records or deliberations to judicial scrutiny.

There is no judicial precedent for the kind of detailed indexing and *in camera* inspection required by the district court. To the contrary, the courts which have been confronted with a claim of legislative privilege have neither required *nor* needed such a procedure to adequately evaluate the claim. And neither the Clerk, nor the Select Committee "would have this Court blindly accept their conclusory and seemingly self-serving suggestion that they will screen what is and what is not protected." J.A. 666. What both the Clerk and the Select Committee *did* request is that the Court "meticulously review" the subpoena itself, *United States v. Nixon,* 418 U.S. 683, 702 (1974), which on its face clearly called for protected materials, and determine by application of prior caselaw the legitimacy of the claim of privilege.

---

[14] Even in nontextual contexts, the Court has found that in suits against government officials, intrusive inquiry into the deliberative processes of the government resulting from broad-ranging discovery "implicate separation of powers concerns", *Harlow v. Fitzgerald.* 102 S.Ct. 2690, 2738 nn. 28, 29 (1982), sufficient to bar discovery *Id.,* 102 S.Ct. at 2739.

45

This is the established procedure for judicial review of speech or debate claims in this and other circuits, because for one, the Clause protects the legislature from "accountability before a possibly hostile judiciary," *United States v. Johnson,* 383 U.S. 169, 183 (1966), when it applies, and secondly insures that the subpoenaed party, whether a Member, aide or "officer of Congress" and "ranking non-member" like the Clerk, 2 U.S.C. § 60–1(b), *Buckley v. Valeo,* 424 U.S. 1, 128 (1976), will not be forced to assert their privilege document by document. By forcing the Clerk to do so, the court failed to grasp that the Clause protects the legislature from the distraction and interference such a laborious procedure necessarily involves.

Requiring the House to undertake the painstaking and onerous task of reviewing thousands of documents entitled as a class to speech or debate treatment is itself a burden the Clause is designed to relieve. *Dombrowski v. Eastland,* 387 U.S. 82, 85 (1967).

But even if the procedure deemed necessary by the district court could be justified under special circumstances, it clearly is not required here, where the plaintiff's subpoena identifies by category protected material with sufficient particularity to permit review of the issue without indexing or *in camera* inspection.[15]

The law of this circuit is unequivocal on this point. "In our view [the Clause] also forbids inquiry into acts which are purportedly or apparently legislative, *even to determine if they are legislative in fact.*" *United States v. Dowdy,* 479 F.2d 213, 226 (4th Cir. 1973) (emphasis added).

---

[15] The difficulty in providing a "detailed index" in this case is even more serious given the breadth of the subpoena. For example, the subpoena requires production of "documents evidencing the truth or falsity of facts asserted in affidavits" [of Chairman Pepper and defendant Holton] and "all documents tending to prove or disprove statements made in the aforesaid affidavits received by the Committee or created . . . ." Attachment to Subpoena ¶s 15 D., and 17. J.A. 37–39. It is beyond the ability of any custodian to render subjective judgments concerning subpoenaed documents and yet the district court, on the pain of contempt, held the Clerk to this unattainable standard of compliance

46

When a civil litigant subpoenas, *inter alia,* the notes of committee investigators, Attachment to Subpoena, ¶A.6., J.A. 35. documents authorizing the conduct of sales meetings which the Select Committee used as the *modus operandi* of the investigation, *id.* ¶B.8, J.A. 36, documents "appraising the Committee's investigation techniques and methods used in connection with Medicare supplemental and cancer insurance investigation," *id.,* ¶B13, J.A. 37, as well as correspondence from the Select Committee to numerous congressional and executive branch agencies seeking information, *id.* ¶15, J.A. 37, it hardly seems necessary to require indexing and *in camera* inspection to apply the Clause.

As the *Dowdy* court declared:

> Once it is determined, as here, that the legislative function (here, the full investigation of the Monarch Complaint to determine if formal subcommittee hearings should be held was *apparently* being performed, the propriety and the motivation for action taken, as well as the detail of the acts performed, are immune from judicial scrutiny.

479 F.2d at 226. (emphasis in original)

Other district courts within the circuit have considered *and* validated the speech or debate claims asserted by Members and aides without the procedures imposed by the district court in this case.

In *Federal Leasing, Inc.* v. *Underwriters at Lloyd's,* Civil Action No. H–79–1088, *Court Actions of Vital Interest To Congress, supra* at 502 the Committee on House Administration and an aide to the committee moved to quash a subpoena for records relating to the procurement of computer services for the House. The district court, per Judge Harvey, quashed that part of the subpoena evidencing "the actual deliberative process whereby the Committee decided whether to procure and on what terms." *Court Actions of Vital Interest To Congress* at 504. The court ordered that documents evidencing "subsequent ministerial acts undertaken to implement the Committee's decision to enter into a business transaction" be

47

of
6.,
et-
er-
its
nd
tal
as
iu-
ek-
es-
to

ive
on-
iit-
ing
for
ier-

red
by
by

d's,
ter-
use
l to
ent
per
evi-
the
hat
504.
bse-
om-
' be

produced, *id.* at 403, including the "solicitation of bids, the signing of contracts and the payment of invoices . . ." *Id.* But the court reviewed the speech or debate claim without requiring indexing or in camera inspection.

Other courts outside the circuit have resolved speech or debate claims without either a detailed index of the records sought or in camera review, even in criminal cases where the defendant asserts a compelling constitutional interest in obtaining congressional documents. In *United States* v. *Peoples Temple of the Disciples of Christ,* 515 F.Supp. 246 (D.D.C. 1981) defendant sought extensive unpublished documentary materials gathered and generated by the House Committee on Foreign Affairs during its investigation of the Jonestown, Guyana tragedy.[16] The court quashed the subpoena in its entirety without an index, beyond that provided by the subpoena itself, or *in camera* inspection, because "once it is determined that Congress or any of its members have acted within the legitimate legislative sphere, neither the Executive branch nor the Judiciary shall interfere with legislative discretion." 515 F.Supp. at 248. *See also United States* v. *Layton,* Cr. No. 80–416–RFP (N.D. Calif. issued May 8, 1981) *reprinted in Court Actions of Vital Interest To Congress, supra,* at 416; *United States* v. *Ehrlichman,* 389 F.Supp. 95, 97–98 (D.D.C. 1974) *aff'd on other grounds sub. nom. United States* v. *Liddy,* 542 F.2d 76 (D.C. Cir. 1976) (executive session transcript not subject to subpoena; no *in camera* inspection); *United States* v. *Calley,* 46 C.M.R. 1131 (A.C.M.R. 1973), *aff'd* 48 C.M.R. 19 (C.M.A. 1973), *petition for habeas corpus denied,* 425 U.S. 911 (1976) (House declined to furnish transcript of secret testimony given to

---

[16] The subpoena was similarly broad in that it called "for the production of any and all documents and materials collected, created or obtained by the Committee on Foreign Affairs of the House of Representatives in the course of its investigation into the circumstances surrounding the death of Representative Leo J. Ryan in the Jonestown tragedy." Opposition of Receiver To The Motion To Quash of Representative Zablocki at 3-4. *United States* v. *Peoples Temple of the Disciples of Christ, supra.*

48

House subcommittee; Army Court of Military Review declined to dispute the privilege; no in camera inspection); *United States* v. *Hoffa*, 205 F.Supp. 710, 723 (S.D. Fla. 1962), *cert. denied sub nom. Hoffa* v. *Lieb*, 371 U.S. 892 (1962) (wiretap withheld from defendant by "invocation of legislative privilege by the United States Senate").

There simply is no basis for imposing the procedures required by the district court and thereby relegating the constitutionally based speech or debate privilege to the status of a mere *statutorily* created right.

### VII. THE DETERMINATION WHETHER TO MAKE PUBLIC ALL, PART, OR NONE OF HOUSE PROCEEDINGS, INCLUDING LEG- ISLATIVE INVESTIGATIONS, IS FIRMLY COMMITTED TO CONGRESS BY THE PUBLICATION CLAUSE ARTICLE I, § 5, cl. 3

#### A. The Decision To Exclude The Subpoenaed Materials From The Printed Hearings And Report Is Textually Committed To The House

As has already been discussed, *supra* at II A, the House published extensive findings and conclusions concerning the investigation into supplementary medicare insurance, including cancer insurance. These publications include, for example, surveys and representative samplings of "complaints" received from senior citizens concerning abusive sales practices. *Abuses In The Sale of Health Insurance To The Elderly In Supplementation of Medicare: A National Scandal, A Staff Study By The Select Comm. on Aging*, Comm. Pub. No. 160, 95th Cong., 2d Sess. 96 (1978). By no means were all of the complaints which were received published, and some were received anonymously pursuant to the Select Committee's determination to send the "inquiry . . . 'blind'—that is the senior citizen had a choice as to whether or not to sign their name." *Id.* The subpoena requires production of these letters and responses from the elderly. The Select Committee also requested and received information from numerous legislative branch and executive agencies, as well as state regulators, insurance carriers and senior citizen groups. *Select Committee Staff Study* at 329, 340. The Select Committee did not, however, publish either the requests or the replies in their entirety, but like the com-