**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JEWISH WAR VETERANS OF THE UNITED STATES OF AMERICA, INC., RICHARD A. SMITH, MINA SAGHEB, and JUDITH M. COPELAND, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 1:07-mc-00220 (JB) Case No. 1:07-mc-00221 (JB) Case No. 1:07-mc-00222 (JB) |
| ROBERT M. GATES, Secretary of Defense, in His Official Capacity, | ) ) ) | |
| Defendant. | ) ) ) | |

**MOTION OF CONGRESSMEN
DARRELL E. ISSA, BRIAN P. BILBRAY AND DUNCAN HUNTER
FOR STAY PENDING APPEAL**

Pursuant to Rules 7(b) and 62 of the Federal Rules of Civil Procedure, and Rule 8(a)(1) of the Federal Rules of Appellate Procedure, non-parties Congressmen Darrell E. Issa, Brian P. Bilbray, and Duncan Hunter respectfully move this Court for an order staying its September 18, 2007 Order, pending their appeal of that Order and the accompanying Memorandum Opinion, for all the reasons set forth in the accompanying Memorandum of Points and Authorities.

Undersigned counsel conferred today with counsel for Secretary Gates who consented to the relief sought herein, and with counsel for the plaintiffs who declined to consent to the relief sought herein.

A proposed order is attached and oral argument is not requested.

Respectfully submitted,

GERALDINE R. GENNET, General Counsel
(DC Bar #213439)
s/Kerry W. Kircher
KERRY W. KIRCHER, Deputy General Counsel
(DC Bar #386816)
DAVID PLOTINSKY, Assistant Counsel
CHRISTINE DAVENPORT, Assistant Counsel
JOHN FILAMOR, Assistant Counsel
(DC Bar #476240)

Office of General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515
202/225-9700 (telephone)
E-mail: kerry.kircher@mail.house.gov

Counsel for Congressmen Darrell E. Issa, Brian P.
Bilbray and Duncan Hunter

October 10, 2007

## CERTIFICATE OF SERVICE

I certify that on October 10, 2007, I served the foregoing Motion of Congressmen Darrell E. Issa, Brian P. Bilbray and Duncan Hunter for Stay Pending Appeal, through the electronic case filing system and by .pdf email on the following:

> Jonathan H. Siegelbaum, Esq.
> Wilmer Cutler Pickering Hale and Dorr
> 1875 Pennsylvania Avenue, NW
> Washington, D.C.   20006
> Email: jonathan.siegelbaum@wilmerhale.com
>
> Ryan Nelson
> U.S. Department of Justice, ENRD
> Natural Resources Section
> 601 D Street, NW
> P.O. Box 663
> Washington, D.C.   20004-0663
> Email: ryan.nelson@usdoj.gov
>
> Heide Herrmann
> U.S. Department of Justice, ENRD
> Natural Resources Section
> 601 D Street NW
> P.O. Box 663
> Washington, D.C.   20044-0663
> Email: Heide.Herrmann@usdoj.gov

> s/Kerry W. Kircher
> Kerry W. Kircher
> E-mail: kerry.kircher@mail.house.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
JEWISH WAR VETERANS OF THE              )
UNITED STATES OF AMERICA, INC.,         )
RICHARD A. SMITH, MINA SAGHEB,          )
and JUDITH M. COPELAND,                 )
                                        )
                Plaintiffs,             )
                                        )    Case No. 1:07-mc-00220 (JB)
        v.                              )    Case No. 1:07-mc-00221 (JB)
                                        )    Case No. 1:07-mc-00222 (JB)
ROBERT M. GATES,                        )
Secretary of Defense, in His Official Capacity,  )
                                        )
                Defendant.              )
_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION OF CONGRESSMEN DARRELL E. ISSA,
BRIAN P. BILBRAY AND DUNCAN HUNTER FOR STAY PENDING APPEAL**

The underlying lawsuit, *Jewish War Veterans of the United States, Inc., et al. v. Gates*,

No. 06-cv-1728, is pending in the U.S. District Court for the Southern District of California, and

is consolidated there with *Trunk, et al. v. City of San Diego, et al.*, No. 06-cv-1597.  Effective

March 26, 2007, plaintiffs in the Jewish War Veterans case ("JWV Plaintiffs") served document

subpoenas on Congressmen Duncan Hunter, Darrell Issa and Brian Bilbray.  On April 9, the

three Members served written objections and, on May 23, the JWV plaintiffs moved to compel.

Following briefing and argument, this Court granted in part and denied in part that motion.  *See*

Memorandum Opinion and Order (Sept. 18, 2007).  On September 27, the three Members filed a

Notice of Appeal, and the Members now seek a stay of the September 18 Order pending their

appeal.[1]

## ARGUMENT

When considering a motion for stay pending appeal, the Court must balance: (i) the likelihood of success on the merits; (ii) whether the appellant will suffer irreparable injury if the stay is denied; (iii) whether the issuance of a stay will cause substantial harm to other parties; and (iv) the public interest.  *U.S. v. Philip Morris, Inc*. 314 F.3d 612, 617 (D.C. Cir. 2003); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958).  In addition, the significance of the issues raised on appeal is also a critical consideration:

> An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant.

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc*., 559 F.2d 841, 844 (D.C. Cir.

---

[1]  The JWV Plaintiffs' suggestion that the three Members should be held in contempt for failing to comply with the Court's September 18 Order, Plaintiffs' Status Report at 3 (Oct. 9, 2007), is not well taken.  We advised counsel for the JWV Plaintiffs shortly after that Order was entered that we anticipated appealing if we could not resolve the matter with them amicably (which we were unable to do); we filed our Notice of Appeal well in advance of the October 4 status report deadline, a Notice that obviously conveyed to the Court (and hopefully to the JWV Plaintiffs as well) the Members' intention to seek appellate review and not to produce documents pending that review; and we notified the JWV Plaintiffs on October 5 that we intended to file this motion on October 9 or 10.  Furthermore, even if this motion should have been filed earlier, the three Members should not pay a price because House Counsel did not do that.  This office, which is very small, has been extremely busy the past several weeks (i) preparing and filing on September 24 a motion to quash, on constitutional and other grounds, 12 trial subpoenas issued to House Members by the defendant in *U.S. v. Wilkes,* No. 07-CR-330 (S.D. Calif.); (ii) arguing that motion in San Diego on October 2; (iii) preparing and filing on September 27 a substantial amicus memorandum dealing with novel and complex constitutional issues in a grand jury matter; and (iv) dealing with a host of legal issues arising out of the recent service of six duces tecum subpoenas on congressional staffers in another grand jury matter – in addition to dealing with the usual routine legal questions that flow into the office on a regular basis.

2

1977).

Application of these factors here clearly militates in favor of a stay.

**I.    A Stay Is Appropriate Because the Members Have a Strong Case on the Merits of Their Appeal.**

    **A.    Three Speech or Debate Issues Were Wrongly Decided**.

There are three principal errors in the Court's Memorandum Opinion that relate to the

Speech or Debate Clause.

1.  In an unprecedented departure from existing law and practice, the Court effectively

arrogated to itself the authority to police, on a document-by-document basis, the Members'

compliance with the Court's Speech or Debate ruling:

> [T]he Court will entrust the Members with the initial – and perhaps
> the ultimate – responsibility of applying the principles set forth in
> this Memorandum Opinion to specifications 3, 5, 7 and 9 of the
> subpoenas.  The Court does so with the expectation that the
> Members will honor their commitment to producing documents
> that are "relevant and not privileged," and with the hope that
> "supervis[ing] the Members' production of document" will be
> unnecessary. . . . Should these hopes be dashed, the Court keeps
> open the possibility of conducting a review of the documents in
> accordance with either the procedure set forth in Rayburn or
> another procedure that is acceptable to the parties and consistent
> with the Speech or Debate Clause.

Memorandum Opinion at 54.

Although the Court purports to hold open only the "possibility" of conducting such a

review, in fact, the Court has necessarily determined that such a review is constitutionally

appropriate here and that such a review will take place here.  This is so because (i) the Court

seems to imply, for no reason that is apparent, that it believes the Members may withhold

relevant, non-privileged documents; (ii) the JWV Plaintiffs have repeatedly made clear – both

3

here and in the San Diego litigation – that they take a very narrow and constricted view of the Speech or Debate Clause; (iii) the JWV Plaintiffs and the Court necessarily will not know what the Members have not produced; (iv) there is no cost to the JWV Plaintiffs associated with requesting a document-by-document review; and (v) in light of the foregoing, the JWV Plaintiffs will have every incentive to request a document-by-document review, and no reason not to request such a review.  In effect, the Court has urged the JWV Plaintiffs to request a document-by-document review and promised that it will conduct such a review.

This was plain error, both because the JWV Plaintiffs did not seek this relief and because it is wholly inconsistent with existing case law.  The only precedent the Court cited was an interim remand order entered in response to a motion for stay pending appeal in *U.S. v. Rayburn House Office Bldg.*, __ F.3d __, 2007 WL 2275237 (D.C. Cir. 2007).  That order was entered in the context of an unprecedented search of a congressional office and seizure of vast quantities of congressional records which Congressman Jefferson had no prior opportunity to review for privilege.  In that wholly unique context, the D.C. Circuit – with the Department of Justice already having custody of Congressman Jefferson's congressional records – devised a wholly unique remedy.  *See* Order in *U.S. v. Rayburn House Office Bldg.*, No. 06-3105 (D.C. Cir. July 28, 2007).[2]

---

[2]  The search of Congressman Jefferson's office posed a unique legal dilemma, as the Court of Appeals recognized.  On one hand, the executive branch had no constitutional authority to review Congressman Jefferson's legislative records.  On the other hand, the Justice Department had already seized the Congressman's congressional records (and already reviewed many of those records).  The Court of Appeals obviously devised its unique remand procedure in order to determine whether any constitutionally privileged materials had actually been seized and/or reviewed while, at the same time, preserving the Justice Department's law enforcement interests in reviewing non-privileged documents.

The situation here – three ordinary, garden variety document subpoenas – is wholly different.  Moreover, nothing in either the majority or the concurring opinions in *Rayburn* suggests in any way that the Court expected its unique remand procedure to be applied in the context of garden variety duces tecum subpoenas.  Indeed, the majority, by stating that an "accommodation [of Members' Speech or Debate interests and the executive's law enforcement interests] . . . is best determined by the legislative and executive branches in the first instance," 2007 WL 2275237 at *8, strongly signaled that its remand procedure was unlikely to be used again, even in the context of a search and seizure case.[3]

Furthermore, this Court's holding is inconsistent with the purposes that underlie the Speech or Debate Clause, one of which is to "prevent intimidation of legislators by the Executive *and accountability before a possibly hostile judiciary. . . .*"  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975) (quoting *Gravel v. U.S.*, 408 U.S. 606, 617 (1972)) (emphasis added).  Because the Speech or Debate Clause is designed to protect the legislative branch from judicial interference – as well as from interference by the executive branch and private parties –  the courts have taken care to circumscribe the scope of judicial review to the large question of what constitutes "legislative activity."  *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995) ("judiciary cannot avoid determining what are the outer limits of legitimate

---

[3]  Even Judge Henderson, who explicitly disagreed "with the majority's reasoning and distance[d herself] from much of its dicta," recognized that *Rayburn* was a "unique moment in our nation's history."  2007 WL 2275237 at *11, *13 n.7.  She went on to emphasize the difference between a warrant and a subpoena for the purpose of supporting her view that Speech or Debate does not apply to warrants.  *Id*. at *13.  While the majority obviously disagreed, it did not thereby manifest in any way, shape or a form a belief "that the judicial review contemplated by the Remand Order" was appropriate in the context of a case such as this one.  Memorandum Opinion at 53.

legislative process"). That is what the Supreme Court meant when it said that "the guarantees of [the Speech or Debate Clause] are vitally important to our system of government and . . . are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979).

Because of the nature of the Speech or Debate privilege – activity-based rather than communications-based – any court conducting the kind of document-by-document review contemplated by this Court's ruling would necessarily have to probe deeply into the Members' activities to determine whether particular documents were legislative. In order to accurately determine whether a document is legislative (and therefore protected), the Court would have to know for what purpose it was created or obtained, how it had been or might in the future be used, what personal legislative initiatives a Member was pursuing, what future legislative initiatives a Member might be contemplating pursuing, what oversight matters or investigations a Member is involved in, and so forth. Without that information – which could only be obtained from the Member (or his or her staff) – the Court would be shooting in the dark. But Members cannot be compelled to disclose this information because it is itself Speech or Debate protected. *See, e.g.*, *Eastland*, 421 U.S. at 508-509; *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983); *U.S. v. Dowdy*, 479 F.2d 213, 226 (4th Cir. 1973). And if the Court did seek to compel the disclosure of this kind of information, it would simply make the constitutional problem worse.

The courts have responded by rightly limiting their role to determining whether specific kinds of categories of documents reflect "legislative activities" as defined by the Supreme Court. The courts make these determinations on the basis of the language in the subpoenas themselves, the Members' representations about the categories of documents they contend are privileged, and

the legal arguments advanced by both sides.[4]  However, absent some extraordinary

circumstances like those presented in the *Rayburn* case, it is not constitutionally appropriate for

the courts to conduct a document-by-document review that would necessarily entail a disclosure

by the Members of the very information they assert is absolutely privileged.  Instead, the Court

must leave to the Members the determinations of which records fall within the scope of the

Court's Order construing the Speech or Debate Clause.  *See generally U.S. v. Nixon,* 418 U.S.

683, 703 (1974) ("In the performance of assigned constitutional duties each branch of the

Government must initially interpret the Constitution, and the interpretation of its powers by any

branch is due great respect from the others.").

2.  Second, the Court erred when it excluded from the protections of the Speech or

Debate Clause documents that may reflect legislative "purpose" but not the motivations of

individual legislators.  Memorandum Opinion at 50-51.  The protections afforded to Members of

Congress by the Speech or Debate Clause apply to *all* activities "within the 'legislative sphere,'"

*Doe v. McMillan*, 412 U.S. 306, 312-13 (1973) (quoting *Gravel*, 408 U.S. at 624-25), which

encompasses all activities that are

"an integral part of the deliberative and communicative processes

_____

[4]  When analyzing whether a particular activity falls within the "legislative sphere" and is,
therefore protected, the courts appropriately defer to a Member's representations about the
activity in question and his or her involvement in that activity.  *See, e.g.*, *Dowdy*, 479 F.2d at 226
 (Speech or Debate Clause "forbids inquiry into acts which are purportedly or apparently
legislative, even to determine if they are legislative in fact.  Once it was determined . . . that the
legislative function . . . was *apparently* being performed, the propriety and the motivation for the
action taken, as well as the detail of the acts performed, are immune from judicial inquiry.");
*McSurely v. McClellan*, 753 F.2d 88, 106 (D.C. Cir. 1985), *cert. denied* 474 U.S. 1005 (1985)
(same); *Pentagen Techs. Int'l, Ltd. v. Committee on Appropriations of U.S. House of
Representatives*, 20 F. Supp. 2d 41, 44 (D.D.C. 1998) (accepting at face value representations of
legislators as to purpose of, and motivations for conducting, challenged activity).

> by which Members participate in committee and House
> proceedings with respect to the consideration and passage or
> rejection of proposed legislation or with respect to other matters
> which the Constitution places within the jurisdiction of either
> House."

*Eastland*, 421 U.S. at 504 (quoting *Gravel*, 408 U.S. at 625).  That is the applicable standard,

and the only standard.  Documents that reflect activities that are "an integral part of the

deliberative and communicative processes by which Members participate in committee and

House proceedings with respect to the consideration and passage or rejection of proposed

legislation . . .," are absolutely protected – period.  It simply does not matter why the JWV

Plaintiffs want particular documents or what particular documents may prove.

3.  Finally, although we are not absolutely certain, it appears that the Court may have

categorically excluded from the protections of the Speech or Debate Clause all documents that

reflect "political" activities.  Memorandum Opinion at 38, 46.  This ruling is based on language

in *Brewster* which states that Speech or Debate does not apply to activities "which are 'political

in nature rather than legislative.'"  *Id.* at 38 (quoting *Brewster*, 408 U.S. at 512).  To the extent

the Court intended its ruling to cover campaign, fund-raising and similar activities, it was correct

(and we have never contended otherwise).  However, to the extent the Court intended its ruling

to cover documents that have some political component, even if those documents also reflect

legislative activities, it erred.

The only standard here is the one quoted above:  whether subpoenaed documents reflect

an activity that is "an integral part of the deliberative and communicative processes by which

Members participate in committee and House proceedings with respect to the consideration and

passage or rejection of proposed legislation . . . ."  *Eastland*, 421 U.S. at 504 (quoting *Gravel*,

408 U.S. at 625).  If they do, they are protected – absolutely.  It does not matter that a particular activity may also have some "political" component or purpose.  Indeed, given that the House and Senate are inherently political institutions, virtually every legislative activity in which Members engage – introduction of legislation, speeches and debates on the floor, votes, and so forth – will have some political component because of the Members' desire, indeed their responsibility, to respond to their voters.  However, the fact that a document which reflects a legislative activity also has some "political" component does not deprive that document of the protections of the Speech or Debate Clause.

### B.     The Relevance Issue Was Wrongly Decided.

The Court also erred in conflating House Rule VIII – which authorizes Members to respond to judicial subpoenas only if the information sought is, among other things, "material and relevant" – with Federal Rule of Civil Procedure 26(b)(1).  Memorandum Opinion at 16 n.1.[5]

Rule VIII was duly adopted by the 110th Congress, H. Res. 6, 110th Cong. (2007), pursuant to the Rulemaking Clause of the Constitution, art. I, § 5, cl. 2, which is a "broad grant of authority," *Consumer's Union of the U.S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1343 (D.C. Cir. 1975), *cert. denied*, 423 U.S. 1051 (1976), that sits "[a]t the very core of our constitutional separation of powers. . . ."  *Walker v. Jones*, 733 F.2d 923, 938 (D.C. Cir. 1984) (MacKinnon, J., concurring in part and dissenting in part), *cert. denied*, 469 U.S. 1036 (1984).  Rules promulgated pursuant to the Rulemaking Clause, within constitutional limitations,

---

[5]  Indeed, the Court appeared to go beyond Rule 26, which includes within its definition of "relevance" information that "appears reasonably calculated to lead to the discovery of admissible evidence."  According to the Court, the Members' congressional records are discoverable if they may "contribute to JWV's ability to present its claims in the underlying litigation," Memorandum Opinion at 29 n.6, which could mean almost anything.

are "absolute and beyond the challenge of any other body or tribunal." *U.S. v. Ballin*, 144 U.S. 1, 5 (1892). *See also U.S. v. Smith*, 286 U.S. 6, 33 (1932) (same); *Shape of Things to Come, Inc. v. County of Kane*, 588 F. Supp. 1192, 1193 (N.D. Ill. 1984) (rules promulgated pursuant to Rulemaking Clause "have the force of law"); *Randolph v. Willis*, 220 F. Supp. 355, 358 (S.D. Cal. 1963) (same).

The D.C. Circuit has held that Congress has the constitutional authority to keep its records entirely secret if it chooses, an authority that is rooted in part in the Rulemaking Clause. *See Goland v. Central Intelligence Agency*, 607 F.2d 339, 346 (D.C. Cir. 1978). If the House has that authority, then it certainly has the authority to prescribe a reasonable standard to govern its release of records sought by subpoena. In promulgating Rule VIII, the House obviously did not intend or purport to authorize the fishing expeditions into Members' congressional records that the Court's opinion authorizes. Indeed, given the much higher standard conveyed by the word "material" – which means "to have probative weight, i.e., [to be] reasonably likely to influence the tribunal in making a determination required to be made," *Weinstock v. U.S.*, 231 F.2d 699, 702 (D.C. Cir. 1956) – it is obvious that the House meant quite the opposite.

Not only did this Court apply the wrong standard, it also applied the wrong substantive law. The parameters of what is "material and relevant" for purposes of this case are defined by *Van Orden v. Perry*, 545 U.S. 677 (2005), inasmuch as the JWV Plaintiffs challenge only the display of a long-standing "passive monument." *See* Complaint for Declaratory and Injunctive Relief at 18 (Aug. 24, 2006), attached as Exhibit A to Plaintiffs' Motion to Compel . . . (May 23, 2007). The four-justice *Van Orden* plurality specifically held that their "analysis is driven both by the nature of the monument and by our Nation's history." 545 U.S. at 686. The plurality

distinguished a "passive monument" from other more active religious displays and activities, *id*.
at 691-92, such as a statute that required the Ten Commandments to be posted on the wall of
each public school classroom (*Stone v. Graham*, 499 U.S. 39 (1980)); a statute that required
Bible readings at each public school at the beginning of each school day (*Sch. Dist. of Abington
Twp. v. Schempp*, 374 U.S. 203 (1963)); and a statute that permitted school officials to invite
clergy to offer prayer at public school graduation*s (Lee v. Weisman*, 505 U.S. 577 (1992)).
Justice Breyer, the fifth justice in the five-justice *Van Orden* majority, analyzed the display itself
and its context – including the circumstances surrounding the display and its physical setting – in
light of the basic purposes of the Establishment Clause.  545 U.S. at 700-04.

Regardless of whether the JWV Plaintiffs' display claim is analyzed under the *Van Orden*
plurality's "nature of the monument and our Nation's history" standard, Justice Breyer's
"display and context" standard, or some combination of both, the document discovery sought
from the three Members is not even remotely relevant, much less material, to their claim.  *See id*.
at 686-92 (plurality focused on specific examples of official acknowledgment of role of religion
in American life; specific examples of official acknowledgment and displays of Ten
Commandments; and nature of particular display of Ten Commandments at issue in *Van Orden*);
700-04 (Justice Breyer focused on history of monument's display, its physical setting and
passage of time without legal challenge to monument, all in light of underlying purposes of
Establishment Clause).[6]

---

[6] It is worth noting here that the District Court in San Diego has twice quashed discovery
subpoenas promulgated by the Trunk and JWV Plaintiffs for information very similar to the
information the JWV Plaintiffs seek here.  *See* Order Denying Plaintiff's Request to Compel the
Depositions of . . . Representative Duncan Hunter at 7-9 (April 2, 2007) ("April 2 Order"),

(continued...)

## II.    The Members Will Suffer Irreparable Harm.

If a stay is not granted, the Members will suffer immediate and irreparable harm.  The Members seek on appeal to preserve a constitutional privilege of critical importance to the legislative branch of government.  Documents the Court has ordered disclosed – and documents the Court is prepared to review individually – are absolutely privileged from such disclosure and review.  Obviously, once those documents are produced or reviewed, the very basis for the Members' appeal – preservation of the privilege against non-disclosure and review – the harm they seek to protect against will have occurred, and that harm will not be reparable.

In addition, House Rule VIII authorizes Members to comply with judicial subpoenas only if the information sought is "material and relevant" and is not privileged.  Accordingly, forcing the Members to produce documents that are not "material and relevant" and/or are privileged while their appeal is pending would effectively force them to violate House Rule VIII.  That harm, also, is not reparable.[7]

---

[6](...continued)
attached as Exhibit E to Plaintiffs' Motion to Compel . . . (May 23, 2007); Order Granting Non-Party Charles LiMandri's Motion to Quash and For Protective Order at 8-11 (Sept. 13, 2007) ("Sept. 13 Order"), attached hereto as Exhibit A.

[7]  The JWV Plaintiffs suggest the Court of Appeals will not have jurisdiction over the Members' appeal unless the Members are cited for contempt.  Status Report at 2 n.1.  That is not accurate.  *See, e.g.*, *McSurely v. McClellan*, 521 F.2d 1024, 1032 n.25 (D.C. Cir. 1975), *reh'g granted*, 553 F.2d 1277 (D.C. Cir. 1976) (en banc), *cert. granted*, 434 U.S. 888 (1977), *cert. dismissed. sub nom. McAdams v. McSurely* 438 U.S. 189 (1978) ("[I]n a case such as this involving the invocation of a privilege [*i.e.*, Speech or Debate] central to the separation of powers between the legislative, executive, and judicial branches we think that requiring a United States Senator to hold himself in contempt in order to protect the privilege would be 'a course unseemly at best.'" (quoting *Nixon v. Sirica*, 487 F.2d 700, 707 n.21 (D.C. Cir. 1973))).  In any event, we will address this issue in more detail if and when the JWV Plaintiffs move in the Circuit Court to dismiss the Members' appeal on jurisdictional grounds, as they have indicated

(continued...)

**III.    The Other Parties Will Not Be Injured.**

Secretary Gates has agreed to the relief sought and acknowledges that he will sustain no harm if a stay is issued.  Neither will the JWV Plaintiffs.  Their summary judgment motion is due in the District Court in San Diego on Friday October 12, 2007.  *See* Order Granting in Part Joint Motion to Enlarge Page Limits for Cross Motions for Summary Judgment (Oct. 4, 2007), attached hereto as Exhibit B.  The JWV Plaintiffs have not asked the District Court in San Diego to delay briefing on the summary judgment issue pending resolution of this subpoena matter, which suggests that they do not think the Members' documents are critical to their ability to move for summary judgment.  Presumably this also reflects, at least in part, the fact that the District Court in San Diego has made clear that it believes the plaintiffs already have adequate amounts of source material available to them for *Lemon* test purposes, April 2 Order at 10, and that it does not consider relevant for *Lemon* test purposes information about Members' motivations and strategies.  *Id*. at 7-9.  *See also* Sept. 13 Order at 9-10.

Furthermore, and in any event, the JWV Plaintiffs can always supplement their summary judgment pleadings later should they ultimately obtain useful information as a result of this proceeding.

**IV.    Granting a Stay Is in the Public Interest.**

The public interest will be served by granting a stay.  The public is entitled to have its Representatives in Congress perform their duties without interference or harassment from outside parties, including from litigants in private lawsuits.  The three Members seek here to

---

[7](...continued)
they will.

vindicate their constitutional rights on appeal, not only for their own sake, but also so that the constituents they serve can be fully and faithfully represented in the Congress. *See, e.g.*, *U.S. v. Myers*, 635 F.2d 932, 935-36 (2d Cir. 1980) ("[T]he Speech or Debate Clause . . . serves as a vital check upon the Executive and Judicial Branches to respect the independence of the Legislative Branch, not merely for the benefit of the Members of Congress, but, more importantly, for the right of the people to be fully and fearlessly represented by their elected Senators and Congressmen."). Maintaining the status quo by granting a stay pending appeal is, therefore, manifestly in the public interest.

## V.     The Issues Raised on Appeal Are Serious.

As noted above, this Court must consider the seriousness of the issues the Members raise on appeal in considering their request for a stay. *Washington Metro. Area Transit Comm'n*, 559 F.2d at 844. In this case, the Court's September 18 Memorandum Opinion departs radically from existing case law in two areas. First, it seriously constricts the scope of the Speech or Debate privilege and carves out a policing role for the Court that is unprecedented. The Court's Speech or Debate rulings have the potential to severely chill Members in the conduct of their legislative activities.

Second, the Court's Opinion – for the first time ever insofar as we are aware – subjects the congressional files of Members of Congress to routine discovery in Establishment Clause cases. The implications of this ruling extend well beyond Establishment Clause cases to other cases in which the purpose of federal legislation may be an issue, and extend well beyond Members of Congress to state and local legislators whose legislative handiwork may be challenged on First Amendment grounds.

14

Under these circumstances, it is appropriate that the Court stay the effect of its September 18 Order to permit the Circuit Court to review the serious issues of high constitutional principle that the Members have raised.[8]

## CONCLUSION

For all the foregoing reasons, the three Members' motion for stay pending appeal should be granted.

Respectfully submitted,

GERALDINE R. GENNET, General Counsel
(DC Bar #213439)
s/Kerry W. Kircher
KERRY W. KIRCHER, Deputy General Counsel
(DC Bar #386816)
DAVID PLOTINSKY, Assistant Counsel
CHRISTINE DAVENPORT, Assistant Counsel
JOHN FILAMOR, Assistant Counsel
(DC Bar #476240)

Office of General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515
202/225-9700 (telephone)

Counsel for Congressmen Darrell E. Issa, Brian P. Bilbray and Duncan Hunter

October 10, 2007

---

[8] The JWV Plaintiffs' egocentric suggestion that the Members "are attempting to drag out the instant subpoena litigation long enough to deprive Plaintiffs of the ability to use the documents this Court has ordered the Members to produce," Status Report at 3, is petulant. The Members did not seek this litigation. Indeed, they tried on three separate occasions to resolve this matter amicably. On each occasion, the JWV Plaintiffs walked away. At this point, the Members seek only to vindicate principles that are important to the House.

**CERTIFICATE OF SERVICE**

I certify that on October 10, 2007, I served the foregoing Memorandum of Points and

Authorities in Support of Motion of Congressmen Darrell E. Issa, Brian P. Bilbray and Duncan

Hunter for Stay Pending Appeal through the electronic case filing system and by .pdf email on

the following:

> Jonathan H. Siegelbaum, Esq.
> Wilmer Cutler Pickering Hale and Dorr
> 1875 Pennsylvania Avenue, NW
> Washington, D.C.  20006
> Email: jonathan.siegelbaum@wilmerhale.com
>
> Ryan Nelson
> U.S. Department of Justice, ENRD
> Natural Resources Section
> 601 D Street, NW
> P.O. Box 663
> Washington, D.C.  20004-0663
> Email: ryan.nelson@usdoj.gov
>
> Heide Herrmann
> U.S. Department of Justice, ENRD
> Natural Resources Section
> 601 D Street NW
> P.O. Box 663
> Washington, D.C.  20044-0663
> Email: Heide.Herrmann@usdoj.gov

> s/Kerry W. Kircher
> Kerry W. Kircher
> E-mail: kerry.kircher@mail.house.gov

Exhibit A

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  STEVE TRUNK and PHILIP K. PAULSON,    )    Case No. 06 CV 1597 LAB (WMc)
                                          )
12              Plaintiffs,               )    **ORDER GRANTING NON- PARTY**
                                          )    **CHARLES LIMANDRI'S MOTION TO**
13  v.                                    )    **QUASH AND FOR PROTECTIVE**
                                          )    **ORDER**
14  CITY OF SAN DIEGO, UNITED STATES      )
    OF AMERICA, DONALD H. RUMSFELD,       )
15  Secretary of Defense and DOES 1 through )
    100, Inclusive                        )
16                                        )
                Defendants.               )
17                                        )
    MOUNT SOLEDAD MEMORIAL                )
18  ASSOCIATION, Real Parties in interest. )
    _____  )
19  JEWISH WAR VETERANS OF THE            )
    UNITED STATES OF AMERICA, INC.,       )
20  RICHARD A. SMITH, MINA SAGHEB, and    )
    JUDITH M. COPELAND,                   )
21                                        )
                Plaintiffs                )
22                                        )
    v.                                    )
23                                        )
    DONALD H. RUMSFELD, Secretary of      )
24  Defense, in his official capacity,    )
                                          )
25              Defendant.                )
    _____  )
26

27  ///

28  ///

## I. INTRODUCTION

On July 6, 2007, Plaintiffs in Consolidated Case No. 06-CV-1728 (the "JWV Plaintiffs") served non-party Charles Li Mandri with a subpoena for his attendance at a deposition to take place on July 19, 2007 at the Law Offices of James McElroy, counsel for Plaintiffs Steve Trunk and Philip Paulson.[1] (Doc. No. 137-4, Exh. A to LiMandri Decl.) Mr. LiMandri is a practicing attorney in San Diego, California and the West Coast Regional Director of the Thomas More Law Center, a law firm in Ann Arbor, Michigan. (Doc. No. 137-3, LiMandri Decl., 2:3-7.) On July 16, 2007, Mr. LiMandri filed a motion seeking to quash the deposition subpoena and requesting a protective order. [Doc. No. 137-2.]

On September 6, 2007, the Court heard oral argument. After hearing from Mr. LiMandri's counsel, counsel for intervenors Congressmen Hunter, Issa and Bilbray and counsel of record as well as careful consideration of Mr. LiMandri's motion to quash and all briefs and exhibits filed in support and in opposition, for the reasons set forth below Mr. LiMandri's motion to quash and for protective order is **GRANTED**.

## II.

## BACKGROUND: LAW OF THE CASE AS IT RELATES TO THE TAKING OF CONGRESSIONAL AND MAYORAL DEPOSITIONS

On April 2, 2007, the Court issued an Order denying Plaintiff Trunk's request to compel the depositions of Congressman Duncan Hunter and San Diego Mayor Jerry Sanders. [Doc. No. 106, p. 6, ln. 18-21.][2] With respect to Congressman Hunter, the Court found that the testimonial privilege afforded by the Speech or Debate Clause of the United States Constitution prevented Plaintiff from deposing Representative Hunter regarding his motivations for supporting House Resolution 5683, 109th Cong. (2nd Sess.2006), a bill that was passed and signed into law by President Bush on August

---

[1] By the September 22, 2006, Order of the Honorable Barry T. Moskowitz, *Trunk v City of San Diego, et al*, 06cv1597 LAB (WMc) has been consolidated with *Jewish War Veterans vs Donald H Rumsfeld, et al* 06cv1728 LAB (WMc). [*See* Doc. No. 15 in Case No. 06cv1728.]

[2] The Court's April 2, 2007 Order is final and the law of the case "govern[ing] the same issue in subsequent stages of the same case." *Christianson v Colt Indus Operating Corp*, 486 U.S. 800, 816 (1988) (quoting *Arizona v California*, 460 U.S. 605, 618 (1983)).

1   14, 2006, Pub. L. No. 109-272, 120 Stat.770 (2006).[3] [Doc. No. 106, p. 6, ln.18-21.]

2          In addition, the Court found that an inquiry into individual subjective motives for supporting

3   H.R. 5683 was irrelevant due to established case law holding that "[a] court's finding of improper

4   purpose behind a statute is appropriately determined by the statute on its face, its legislative history

5   .... the plain meaning of the statute's words, enlightened by their context and the contemporaneous

6   legislative history . . . . Moreover, in determining the legislative purpose of a statute, the Court has

7   also considered the historical context of the statute . . .and the specific sequence of events leading

8   to passage of the statute." *Edwards v. Aguillard,* 482 U.S. 578 at 594-595 [Citations omitted.] *See*

9   *also McCreary vs. ACLU,* 545 U.S. 844, 862 (2005). [Doc. No. 106, p. 7, ln. 26 - p. 8, ln. 6.]

10         With respect to Plaintiff's request to take the deposition of one of San Diego's highest

11  ranking government officials, Mayor Sanders, the Court denied the request finding Plaintiff Trunk

12  failed to establish that the subjective information he sought was relevant, essential to his case and

13  not available through any alternative source or less burdensome means such as written discovery,

14  especially in light of the significant amount of other public source material available to Plaintiff.

15  [Doc. No. 106, pp. 5, 7-10.]

16                              **III. ARGUMENTS**

17  **A.     Motion to Quash and for Protective Order**

18          **1. Non-Party Charles LiMandri**

19         On July 16, 2007, Mr. LiMandri filed a motion to quash the deposition subpoena served on

20  him by JWV Plaintiffs and enter a protective order. In support of his motion, Mr. LiMandri first

21  argues that Plaintiffs' attempt to take his deposition is an end-run around this Court's April 2, 2007

22  Order preventing the depositions of Mayor Sanders and Congressman Hunter. [Doc. No.137-2,

23  6:17-21.] Mr. LiMandri contends that by deposing him, Plaintiffs would obtain information that they

24  could not obtain directly from Congressman Hunter and Mayor Sanders. [Doc. No.137-2, 12:24-

25

26         [3]Specifically, Public Law No. 109-272 (referred to as the "Mt. Soledad Veterans Memorial Preservation Act") authorized the United States to acquire the Mount Soledad Veterans Memorial. On September 8, 2006, the Trunk Plaintiffs filed a first amended complaint against the City of San Diego, the United States of America and

27  the Secretary of Defense, alleging that the Act and the continued display of the memorial violates the Establishment Clause of the U.S. Constitution as well as the No Preference and No Aid clauses of the California

28  Constitution. (Trunk Am. Comp., para. 26.) The JWV Plaintiffs filed a complaint on August 24, 2006, raising one cause of action that also alleges a violation of the federal Establishment Clause. (JWV Comp., para. 58.)

1  13:5.] Further, Mr. LiMandri contends that if the motives behind H.R. 5683 are irrelevant to an

2  Establishment Clause inquiry as to government officials, it is certainly irrelevant as to a private

3  attorney advocating a position. [Doc. No.137-2, 13:3-8.]

4      Next, Mr. LiMandri argues that the proposed testimony is protected by various privileges.

5  As with the Congressman and Mayor, Mr. LiMandri argues that any information sought from him

6  is irrelevant, protected, and accessible through public records. Moreover, Mr. LiMandri states that

7  attorney-client privilege and work-product doctrine both protect his confidential communications

8  and work in relation to the Mt. Soledad cross matter. [Doc. No.137-2, 16:1-17:19.]

9      Additionally, Mr. LiMandri asks that Court protect him from annoyance, embarrassment,

10  oppression, and undue burden. Mr. LiMandri notes that his own statements and positions are

11  irrelevant to any alleged governmental purpose. Mr. LiMandri believes that Plaintiffs' attempt to

12  depose him evidences their hostility toward his religious beliefs. [Doc. No.137-2, 18:9-14.]

13      **2. Intervenors Congressmen Duncan Hunter, Darrell Issa and Brian Bilbray**

14      Intervenors argue the Speech and Debate Clause, already held applicable to Congressman

15  Duncan Hunter, also bars third-parties such as Mr. Limandri from being questioned about the

16  representative's legislative activities and motivations. [Doc. No. 148, pp. 6-13.] Intervenors further

17  contend that Mr. LiMandri may not be questioned on the topics of informal information gathering

18  between Mr. LiMandri and the Congressman or preparation for legislative activities. [Doc. No.

19  148, p.14-18.] In the alternative, Intervenors request that in the event Mr. LiMandri's deposition

20  is taken, counsel for the three members be allowed to participate in the deposition for the purpose

21  of protecting Congressmen Hunter's, Issa's and Bilbray's rights under the Speech or Debate Clause.

22  [Doc. No. 148, p. 19.]

23      **3. Federal Defendants**

24      The Federal Defendants argue that the deposition subpoena must be quashed because the

25  testimony JWV Plaintiffs seek concerns the subjective motivation of legislators in sponsoring the

26  Act, which is irrelevant under the first prong of the test for violation of the Establishment Clause as

27  set forth in *Lemon vs Kurtzman,* 403 U.S. 602,612-613 (1971), and as previously found by this

28  Court in its April 2, 2007 Order. [Doc. No. 152, pp. 8-10.] Further, the Federal Defendants assert

1  that the requested testimony is similarly irrelevant under the remaining two prongs of the *Lemon*

2  Test. [Doc. No. 152, p. 11.] Federal Defendants also contend that Mr. LiMandri's deposition is

3  unnecessary because the JWV Plaintiffs have access to legislative history and historical context from

4  publicly available source materials. [Doc. No. 152, p. 12.]

5  **B.   JWV Plaintiffs' Opposition**

6         JWV Plaintiffs argue that Mr. LiMandri's deposition testimony is relevant and necessary to

7  their claim because of Mr. LiMandri's integral involvement in events leading up to the transfer of

8  the Mt. Soledad cross. [Doc. No. 153, 6:13-7:2.] JWV Plaintiffs propose questioning Mr. LiMandri

9  about his own involvement in the process to develop a fuller picture of the historical context behind

10 the Mt. Soledad cross matter, not about the motives of Congressman Hunter or Mayor Sanders.

11 [Doc. No. 153, 8:5-8.] JWV Plaintiffs also argue that because actions of nongovernmental actors

12 affect the reasonable observer's perception of the governmental action, questioning Mr. LiMandri

13 about his own statements and actions is relevant to their claim.  [Doc. No. 153, 10:7-16.]

14        Additionally, JWV Plaintiffs argue that no privileges afford Mr. LiMandri a blanket

15 immunity from deposition.  In particular, JWV Plaintiffs contend that most of the services Mr.

16 LiMandri provided do not qualify for attorney-client privilege or work-product protection.  [Doc.

17 No. 153, 12:3-13:6.] JWV Plaintiffs also argue that the Speech or Debate Clause fails to bar Mr.

18 LiMandri's deposition because: (1) it does not prevent third parties from testifying about their

19 communications with members of Congress in cases where the members do not face any conceivable

20 liability as a result of their legislative acts; (2) Mr. LiMandri's deposition would not threaten its

21 purposes; and (3) it does not protect the intervenors' informal information gathering activities.

22 [Doc. No. 153, 15:8-18.]

23        Finally, JWV Plaintiffs argue that Mr. LiMandri has no colorable argument that JWV

24 Plaintiffs have subjected him to annoyance, oppression or undue burden by serving him with a

25 deposition subpoena.  JWV Plaintiffs note that they complied with the Federal Rules of Civil

26 Procedure when noticing Mr. LiMandri's deposition. [Doc. No. 153, pp. 28-29.]

27 ///

28 ///

### IV. STANDARDS

**A.    Subpoenas Pursuant to Rule 45 of the Federal Rules of Civil Procedure**

Under Rule 45 of the Federal Rules of Civil Procedure, a subpoena is required to command non-parties to attend and give testimony at a deposition. Fed. R. Civ. P. 45(a)(2)(B). When preparing a subpoena under Rule 45, "a party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate action, which may include, but is not limited to, lost earnings and a reasonable attorney's fee." Fed. R. Civ. P. 45(c)(1).

In addition, the Court may quash or modify a deposition subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).

**B.    Discovery Under Rule 26 of the Federal Rules of Civil Procedure**

In general, a party has the right to discovery of any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). Thus, the scope of discovery under Rule 26 is broad. Discovery may be sought of relevant information not admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.*

Rule 26 also provides a mechanism for the court to issue an order protecting a party from annoyance, embarrassment, oppression, and undue burden or expense including "that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." Fed. R. Civ. P. 26(c)(4). The order may be issued for good cause shown. *Id.* "In determining whether good cause exists for the protective order, the Court must balance the interests in allowing discovery against the relative burdens to the parties and nonparties." *Quair v Bega*, 232 F.R.D. 638, 641 (E.D. Cal. 2005).

**C.    Speech or Debate Privilege - U.S. Const. Art. I, § 6, cl. 1.**

The Speech or Debate Clause of the United States Constitution provides: "For any Speech or Debate in either House [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. Art. I, § 6, cl. 1. The privilege protects speech and other activities undertaken

1  by members of Congress who are acting within a legitimate legislative sphere. *Eastland v United*
2  *States Servicemen's Fund*, 421 U.S. 491, 502-503 (1975). The legislative sphere includes those
3  activities that: (1) are an integral part of the deliberative and communicative processes by which
4  Members participate in House proceedings and (2) address proposed legislation. *Miller v.*
5  *Transamerican Press, Inc.*, 709 F.2d 524, 529 (9th Cir. 1983); *see also United States v Gravel*, 408
6  U.S. 606, 617 (1972) ("[T]he Court's consistent approach has been that to confine the protection of
7  the Speech or Debate Clause to words spoken in debate would be an unacceptably narrow view.
8  Committee reports, resolutions, and the act of voting are equally covered....")

9          In addition, the Speech or Debate clause precludes inquiry into the motivation or purposes
10 of a legislative act. *U.S. v. Brewster*, 408 U.S. 501, 525 (1972)("[T]he Speech or Debate Clause
11 protects against inquiry into the acts that occur in the regular course of the legislative process and
12 into the motivation for those acts.")

13         The privilege afforded under the Speech or Debate Clause has been applied to both criminal
14 and civil contexts. *See Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975)
15 ("The applicability of the Clause to private civil actions is supported by the absoluteness of the terms
16 'shall not be questioned,' and the sweep of the term 'in any other Place.' . . . Just as a criminal
17 prosecution infringes upon the independence which the Clause is designed to preserve, a private
18 civil action, whether for an injunction or damages, creates a distraction and forces Members to divert
19 their time, energy, and attention from their legislative tasks to defend the litigation. Private civil
20 actions also may be used to delay and disrupt the legislative function. Moreover, whether a criminal
21 action is instituted by the Executive Branch, or a civil action is brought by private parties, judicial
22 power is still brought to bear on Members of Congress and legislative independence is imperiled.").

23         In light of the demands and pace of the modern legislative process, as well as the "critical"
24 role aides play in assisting Members with legislative tasks, the Supreme Court extended the scope
25 of the Speech or Debate Clause to a Member's aides or assistants in *United States v. Gravel*, 408
26 U.S. 606, 617-618 (1972) ("[T]hat the day-to-day work of such aides is so critical to the Members'
27 performance that they must be treated as the latter's alter egos; and that if they are not so recognized,
28 the central role of the Speech or Debate Clause - to prevent intimidation of legislators by the

1   Executive and accountability before a possibly hostile judiciary- will inevitably be diminished and

2   frustrated.")(citations omitted). Accordingly, the Supreme Court in *Gravel* forbade the questioning

3   of a Senator's assistant: "(1) concerning the Senator's conduct, or the conduct of his aides, at the .

4   . . meeting of the subcommittee; (2) concerning the motives and purposes behind the Senator's

5   conduct, or that of his aides at the meeting; (3) concerning communications between the Senator and

6   his aides during the term of their employment and related to said meeting or any other legislative

7   act of the Senator; [and] (4) . . . concerning any act, in itself, not criminal, performed by the Senator,

8   or by his aides in the course of their employment, in preparation for the subcommittee hearing." *Id*

9   at 628-629.

10                              **V. DISCUSSION**

11  **A.    The Speech or Debate Clause Privilege as well as Relevance Concerns Prevent JWV**

12         **Plaintiffs From Taking Mr. LiMandri's Deposition.**

13         The Court has previously ruled, and case law expounding on the scope of the Speech or

14  Debate Clause makes clear, that an inquiry into the Congressman's motivation behind legislation

15  is impermissible. [Doc. No. 106, p. 6, ln. 18-21.] *U.S. v. Brewster*, 408 U.S. 501, 525 (1972),

16  *see also City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir. 1984) (citing *Michael M. v.*

17  *Superior Court*, 450 U.S. 464, 469-70 (1981).

18         Case law addressing the propriety of questioning third-parties concerning potentially

19  Speech or Debate Clause privileged activities of a member is sparse and varied between circuits.

20  In *Tavoulareas v. Piro*, 93 F.R.D.11 (D.C.D.C. 1981), the United States District Court for the

21  District of Columbia held that while non-party congressional staffers could not be questioned

22  about the motivations behind their congressional investigations, they could be deposed

23  concerning the motivations of Washington Post reporters in bringing the matters to be

24  investigated to the attention of congressional staff. *Id*. at 19; *see also Tavoulareas v. Piro*, 527

25  F.Supp. 676, 680 (D.C.D.C. 1981) ("In sum, the Court will order congressional deponents to

26  answer any questions pertaining to the voluntary submission (as opposed to acquisition) of

27  information to congressional staff by reporters or by other sources.") This position is what the

28  JWV Plaintiffs advocate.

1    However, the Ninth Circuit in *Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9th Cir.

2    1983) disagreed with the *Tavoulareas* court's allowance of questions concerning

3    communications initiated by noncongressional sources, finding: (1) practical difficulty with

4    separating the acts of a noncongressional source from the responsive communication of

5    congressional staff, and (2) intrusion into realms protected by the Speech or Debate Clause in

6    that a congressman's active or passive role in legislation would necessarily be revealed in

7    response to such questions. *Id.* at 530. Accordingly, the Ninth Circuit held the Speech or

8    Debate Clause prevented questioning of a non-party, former Congressman about his sources of

9    information. *Id.* ("Obtaining information pertinent to potential legislation or investigation is one

10   of the "things generally done in a session of the House," *Kilbourn v. Thompson*, 103 U.S. 168,

11   204 (1957), concerning matters within the "legitimate legislative sphere," *Eastland v. United*

12   *States Servicemen's Fund*, 421 U.S. 491, 503 (1975). Constituents may provide data to

13   document their views when urging the Congressman to initiate or support some legislative

14   action.")

15    The JWV Plaintiffs were forthright in admitting they wanted to depose Mr. LiMandri, in

16   part, to determine the motivations, purpose and strategies behind the Congressmen's legislative

17   activities and decisions concerning the Mt. Soledad cross. Unable to depose the Congressmen in

18   light of the Court's April 2, 2007 ruling, the JWV Plaintiffs seek an end-around by deposing Mr.

19   LiMandri to discover the same information they sought directly through the previously

20   prohibited depositions. Clearly, the Congressman's active or passive role in legislation would

21   necessarily be revealed in response to such questions. Further, although Mr. LiMandri was not a

22   paid staff member of any of the three Congressmen, it is unquestioned that he served as an

23   advisor to them with respective to then prospective legislative matters. This situation is

24   precisely the situation contemplated by *Miller* when the Ninth Circuit discussed the practical

25   difficulty of separating the acts of a noncongressional source from the responsive

26   communication of congressional staff. In addition, it is clear to this Court that permitting the

27   deposition of Mr. LiMandri would produce a harmful chilling effect on the right of federal

28   legislators to gather information and consult with paid or non-paid advisors with regard to

1    prospective legislative activities and decisions. Such a deposition would constitute an

2    unwarranted intrusion into matters protected by the Speech or Debate Clause which the Ninth

3    Circuit says is improper.

4        Given the Ninth Circuit's careful attention in *Miller* to protecting against the use of

5    circuitous routes to delve into areas privileged by the Speech or Debate Clause, this Court

6    **GRANTS** Mr. LiMandri's motion to quash and for protective order and specifically precludes

7    JWV Plaintiffs from asking Mr. LiMandri about Congressman's Hunter's legislative motivations

8    or activities. Moreover, even if JWV Plaintiffs could circumvent this Court's April 2, 2007

9    Order by deposing Mr. LiMandri concerning Congressman Hunter's motivations, which it

10   cannot, such testimony would be irrelevant to the District Court's analysis under the *Lemon* test .

11   *Edwards v Aguillard,* 482 U.S. 578 at 594-595, *see also McCreary vs ACLU,* 545 U.S. 844,

12   862 (2005); [Doc. No. 106, p. 7, ln. 26 - p. 8, ln. 6.] If the motivations of actual representatives

13   are irrelevant to an Establishment Clause inquiry then a private person's interests in, motivations

14   behind or activities in support of H.R. 5683 are equally irrelevant.

15       JWV Plaintiffs' contention that a deposition of Mr. LiMandri is needed to advance their

16   case with respect to the informed, reasonable observer standard under the effect prong of the

17   *Lemon* test is untenable given JWV Plaintiffs acknowledgment of Mr. LiMandri's decidedly

18   partisan involvement in the issues concerning the Mt. Soledad memorial. [*See* Doc. No. 153,

19   1:17-21, ("Charles LiMandri is the West Coast Regional Director of the Thomas More Law

20   Center, an advocacy group whose stated mission, as set forth on its website, is the 'promotion of

21   the religious freedom of Christians' and the protection of 'Christians and their religious beliefs in

22   the public square'"); Doc. No. 153, 2:13-15, ("Mr. LiMandri wrote that [designating the Cross

23   as a national war memorial] was necessary because 'religion and morality are the foundation of

24   our country' and the Cross is 'one of the most visible . . . symbols of [our Christian faith.]'");

25   Doc. No. 153, 31-2 , ("Mr. LiMandri later praised Rep. Cunningham's efforts as 'an act of

26   God.'")] The Supreme Court's discussion in *McCreary* of the hypothetical reasonable observer

27   makes clear that while such an observer is familiar with the history of the government action at

28   issue, the observer is also objective. *See McCreary County, Kentucky v Am. Civil Liberties*

1   *Union of Kentucky*, 545 U.S. 844, 866 (2005) (quoting *Santa Fe Independent School Dist. v.*

2   *Doe*, 530 U.S. 290, 308 ("objective observer is familiar with 'implementation of government

3   action'.") JWV Plaintiffs' briefs show that even they recognize that Mr. LiMandri does not fit

4   the mold of an *objective* observer. Any testimony Mr. LiMandri may therefore have regarding

5   his observations of the memorial are unhelpful and irrelevant to the *Lemon* test's effect prong.

6   **B.    Mr. LiMandri Has Shown Good Cause Exists To Safeguard The Attorney-Client**

7   **Privilege By Barring His Deposition On All Subjects Including Historical Issues**

8   **Which Would At Best Produce Duplicative Information.**

9   As explained in the Court's April 2, 2007 Order, the courts look to several objective

10  factors to determine whether a state statute violates the Establishment Clause, including, but not

11  limited to: (1) legislative history; (2) the plain meaning of a statute's words; (3) the historical

12  context of the statute; and (4) the specific sequence of events leading to passage of the statute.

13  *Edwards vs. Aguillard*, 482 U.S. 578, 594-595 (1987).

14  JWV Plaintiffs contend that there is a need to depose Mr. LiMandri regarding the events

15  leading up to the passage of the statute and its historical context. *See* Fed. R. Civ. P. 26(b)(1).

16  While these two categories are acceptable subjects of inquiry, Mr. LiMandri has shown good

17  cause exists under Rule 26 and Rule 45 to issue a protective order preventing his deposition for

18  all purposes. Mr. LiMandri has served as an attorney for many years for several clients involved

19  in a variety of legal issues surrounding the Mt. Soledad Veterans Memorial, including the City of

20  San Diego.[1] *See* LiMandri Decl., paras. 5, 8, 9, and 11.; *see* Fed. R. Civ. P. 45(c)(3)(A)(iii)

21  (stating that the Court may quash a deposition subpoena if it "requires disclosure of privileged or

22  other protected matter"). Even if JWV Plaintiffs' counsel were able to craft a few relevant and

23  meaningful deposition questions that did not run afoul of the timing of Mr. LiMandri's attorney-

24  client relationships and their attendant privileges (and the Court does not think such a feat is

25  possible), the extremely limited amount of historical information JWV Plaintiffs might acquire

26  does not tip the balance in favor of allowing Mr. LiMandri's deposition. *Quair v. Bega*, 232

27  F.R.D. 638, 641 (E.D. Cal. 2005) ("In determining whether good cause exists for the protective

28  _____

[1]    As an example, the California Court of Appeal acknowledged attorney LiMandri's role in representing the City of San Diego in *Paulson v. Abdelnour*, 145 Cal. App. 4th 400 (2006).

1  order, the Court must balance the interests in allowing discovery against the relative burdens to

2  the parties and nonparties."); *see* Fed. R. Civ. P. 26(c)(4). JWV Plaintiffs have a wealth of

3  historical and contextual information from other documentary and testimonial sources as

4  demonstrated by the instant motion and as attested to by counsel for JWV Plaintiffs at oral

5  argument. [Doc. No. 153, 1:17-5:23.] The minimal benefit that would be derived from allowing

6  JWV Plaintiffs to depose Mr. Limandri for the supposed purpose of gleaning cumulative

7  historical information is outweighed by the need to respect the attorney-client privilege, prevent

8  unreasonably duplicative discovery and protect against annoyance and undue burden. Fed. R.

9  Civ. P. 26. Accordingly, this Court **GRANTS** Mr. LiMandri's motion to quash and for

10  protective order.

11                    **VI. CONCLUSION AND ORDER THEREON**

12          In light of the foregoing, non-party Charles LiMandri's Motion to Quash and for Protective

13  Order is **GRANTED.**

14          **IT IS SO ORDERED.**

15  DATED: September 13, 2007

16                                                    *WMcCurine Jr.*

17                                                    Hon. William McCurine, Jr.
                                                     U.S. Magistrate Judge, U.S. District Court

18  COPY TO:
    HONORABLE LARRY A. BURNS, U.S. DISTRICT JUDGE

19  ALL PARTIES AND COUNSEL OF RECORD

20

21

22

23

24

25

26

27

28

Exhibit B



1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| STEVE TRUNK and PHILIP K. PAULSON, | Case No. 06-CV-1597 LAB (WMc) (consolidated with 06cv1728) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART JOINT MOTION TO ENLARGE PAGE LIMITS FOR CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| CITY OF SAN DIEGO, THE UNITED STATES OF AMERICA, et al., | |
| Defendants, | |
| MOUNT SOLEDAD MEMORIAL ASSOCIATION, Real parties in interest. | |
| JEWISH WAR VETERANS OF THE UNITED STATES OF AMERICA, INC., RICHARD A. SMITH, MINA SAGHEB, and JUDITH M. COPELAND, | |
| Plaintiffs, | |
| v. | |
| ROBERT M. GATES, Secretary of Defense, in his official capacity, | |
| Defendant. | |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27      Upon consideration of the Parties' Joint Motion to Enlarge Page Limits, the Court hereby

28  enlarges the page limits for the Parties' briefs as follows:  (a) each Party's opening memorandum

1

2

3

4   of points and authorities in support of its motion for summary judgment may be no longer than

5   50 pages; (b) each Party's brief in opposition to summary judgment may be no longer than 50

6   pages; and (c) each Party's reply memorandum in support of its motion for summary judgment

7   may be no longer than 20 pages.   The filing date for Plaintiffs' motions for summary judgment

8   is hereby **EXTENDED** to Friday, October 12, 2007.  All other scheduled briefing dates remain

9   unchanged.

10      The parties are reminded that the Court has not yet taken any action based on its Order to

11  Show Cause issued June 4, 2007, and responses thereto, and a ruling by the Court regarding the

12  justiciability of Plaintiff Trunk's claim could affect his standing to move for summary judgment.

13

14      **IT IS SO ORDERED**

15

16  DATED:  October 4, 2007

17

18                                      _Larry A Burns_

19                                      HONORABLE LARRY ALAN BURNS
                                        United States District Judge

20

21

22

23

24

25

26

27

28

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JEWISH WAR VETERANS OF THE<br>UNITED STATES OF AMERICA, INC.,<br>RICHARD A. SMITH, MINA SAGHEB,<br>and JUDITH M. COPELAND,<br><br>            Plaintiffs,<br><br>      v.<br><br>ROBERT M. GATES,<br>Secretary of Defense, in His Official Capacity,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 1:07-mc-00220 (JB)<br>)     Case No. 1:07-mc-00221 (JB)<br>)     Case No. 1:07-mc-00222 (JB)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

UPON CONSIDERATION of the Motion of Congressmen Darrell E. Issa, Brian P. Bilbray and Duncan Hunter for Stay Pending Appeal ("Motion"), the opposition, if any, and the entire record herein, it is by the Court this _____ day of _____, 2007 ORDERED

That the Motion is granted for all the reasons stated in the Memorandum of Points and Authorities filed in support of the Motion.

_____
John Bates
U.S. District Judge