**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

JEWISH WAR VETERANS OF THE ))
UNITED STATES OF AMERICA, INC., )
RICHARD A. SMITH, MINA SAGHEB, )
and JUDITH M. COPELAND, )

                   Plaintiffs, )

        v. )

ROBERT M. GATES, )
Secretary of Defense, in His Official Capacity, )

               Defendant. )
_____ )

Case No. 1:07-mc-00220 (JB)
Case No. 1:07-mc-00221 (JB)
Case No. 1:07-mc-00222 (JB)

**PRAECIPE**

Congressmen Duncan Hunter, Darrell E. Issa and Brian P. Bilbray respectfully bring to the Court's attention the attached Order Dismissing Claims for Lack of Standing . . . (Nov. 6, 2007), entered by Judge Burns of the U.S. District Court for the Southern District of California in _Trunk, et al. v. City of San Diego, et al._, No. 06-cv-1597, which is consolidated there with _Jewish War Veterans of the United States of America, Inc., et al. v. Gates_, No. 06-cv-1728.

The Order dismisses, on standing grounds, the plaintiffs' Establishment Clause challenge to the transfer to the United States of the land on which the Mt. Soledad Veterans Memorial is located, a transfer effectuated by the Mt. Soledad Veterans Memorial Preservation Act, Public Law 109-272, 120 Stat. 770 (2006). _See_ Order of 12-18. The Order effectively leaves alive only the plaintiffs' Establishment Clause challenge to the Secretary of Defense's "display" of the cross.

Respectfully submitted,

GERALDINE R. GENNET, DC Bar #213439
General Counsel
s/Kerry W. Kircher
KERRY W. KIRCHER, DC Bar #386816
Deputy General Counsel
CHRISTINE DAVENPORT
Assistant Counsel
JOHN FILAMOR, DC Bar #476240
Assistant Counsel

Office of General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515
202/225-9700 (telephone)
E-mail: kerry.kircher@mail.house.gov
Counsel for Congressmen Duncan Hunter, Darrell
E. Issa and Brian P. Bilbray

November 8, 2007

**CERTIFICATE OF SERVICE**

I certify that on November 8, 2007, I served the foregoing Praecipe through the electronic

case filing system, and by .pdf email on the following:

Ryan Phair, Esq.
Wilmer Cutler Pickering Hale and Dorr
1875 Pennsylvania Avenue, NW
Washington, D.C.   20006
Email: ryan.phair@wilmerhale.com

Ryan Nelson
U.S. Department of Justice, ENRD
Natural Resources Section
601 D Street, NW
P.O. Box 663
Washington, D.C.   20004-0663
Email: ryan.nelson@usdoj.gov

Heide Herrmann
U.S. Department of Justice, ENRD
Natural Resources Section
601 D Street NW
P.O. Box 663
Washington, D.C.   20044-0663
Email: Heide.Herrmann@usdoj.gov

s/Kerry W. Kircher
Kerry W. Kircher
E-mail: kerry.kircher@mail.house.gov

1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 STEVE TRUNK and PHILIP K.
PAULSON,

12
                            Plaintiffs,

13      vs.

14

15 CITY OF SAN DIEGO, UNITED STATES
OF AMERICA, DONALD H. RUMSFELD,

16 Secretary of Defense and DOES 1
through 100, inclusive,

17
                          Defendants.

18 _____

19 MOUNT SOLEDAD MEMORIAL
ASSOCIATION,

20
               Real Parties in Interest.

21

22

CASE NO. 06cv1597-LAB (WMc)
(Consol. w/06cv1728-LAB (WMc))

**ORDER DISMISSING CLAIMS
FOR LACK OF STANDING; AND**

**ORDER DISMISSING CITY OF
SAN DIEGO; AND**

**ORDER ENTERING JUDGMENT
AS TO DISMISSED CLAIMS**

23      On September 8, 2006, Plaintiffs Steve Trunk and Philip Paulson filed their First

24 Amended Complaint ("FAC") seeking declaratory and injunctive relief. Specifically, Plaintiffs

25 seek a declaration that transfer of a certain parcel of land on Mt. Soledad to the federal

26 government violates Plaintiffs' rights under the U.S. and California constitutions, and that the

27 statute authorizing it be declared void *ab initio*. Plaintiffs also sought both a preliminary and

28 permanent injunction prohibiting Defendants from displaying the cross on government

1

property.  On September 22, 2006, this case was consolidated with *Jewish War Veterans of the United States of America, Inc.,* et al.*, v. Rumsfeld*, Case no. 06cv1728, filed August 24, 2006 (now *Jewish War Veterans of the United States of America, Inc.*, et al. *v. Gates*) ("*Jewish War Veterans*").

The FAC was subject to a motion to dismiss for lack of jurisdiction, filed October 10, 2006.  Amicus Pacific Justice Institute filed a brief on October 13, 2006 in support of Defendants' motion to dismiss.  The Court issued an order on November 7, 2006, noting the amicus brief had raised the issue of Article III standing, and directed the parties to address this issue either in their briefing on the motion to dismiss, or in a subsequent motion. The Court denied the motion to dismiss on November 29, 2006 by minute order following a hearing.

On May 31, 2007, the consolidated cases were reassigned to Judge Larry Burns.  On June 4, the Court ordered Plaintiff Trunk to show cause why the certain claims in the FAC filed in *Trunk v. City of San Diego* should not be dismissed as non-justiciable.[1]  In its order to show cause (the "OSC"), the Court noted that it did not intend to revisit the earlier rulings regarding standing, but that additional questions going to the issue of subject matter jurisdiction presented themselves.  In particular, it was not clear to the Court Trunk had standing to pursue all the claims set forth in the FAC.  The Court further directed the parties to address certain questions it appeared had not been adequately briefed.

The Court thereafter held a status conference at which all parties were represented, and at which the OSC was discussed.  Thereafter, the Court issued a scheduling order for briefing on the OSC and other matters, and the parties filed their briefing in response to the OSC.  Although the OSC was specifically directed to Trunk, the other parties and the *amicus* were directed or permitted to submit briefing, and did so.

/ / /

/ / /

---

[1] Plaintiff Paulson is now deceased, and thus Trunk is the only remaining Plaintiff who may have standing to prosecute the FAC.

2

1  **I.    Legal Standards**

2       Standing is a jurisdictional requirement, and a party invoking federal jurisdiction —

3  *i.e.*, Trunk — has the burden of establishing it. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

4  561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).  Standing is a "threshold question in

5  every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Federal courts are required

6  to examine jurisdictional issues including standing, even *sua sponte* if necessary. *B.C. v.*

7  *Plumas Unified School Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999).  The presence of a

8  political question is likewise a jurisdictional issue.  If Trunk, the only remaining Plaintiff raising

9  claims in the FAC, lacks standing, or if claims in the FAC present a political question, they

10  must be dismissed as non-justiciable.  *No GWEN Alliance of Lane County, Inc. v. Aldridge*,

11  855 F.2d 1380, 1382 (9th Cir. 1988) (citation omitted).  If both questions are presented, the

12  Court should address the issue of standing first. *Id.*

13       Even though Trunk cites California law, he must show he has standing sufficient to

14  satisfy federal standards, regardless of whether he had standing under California law in

15  preceding actions.   *Lee v. American Nat'l Ins. Co.*,  260 F.3d 997, 999–1000, 1001–02

16  (9th Cir. 2001). *Accord Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994) (citing

17  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628

18  (1985)) (holding that standing to bring an action in federal court is determined under federal,

19  not state law).  To show he has Article III standing, Trunk must establish three things:

20       First [he] must have suffered an injury in fact — an invasion of a legally
         protected interest which is (a) concrete and particularized, and (b) actual or
21       imminent, not conjectural or hypothetical. Second, there must be a causal
         connection between the injury and the conduct complained of . . . . Third,
22       it must be likely, as opposed to merely speculative, that the injury will be
         redressed by a favorable decision.

23

24  *Lujan*, 504 U.S. at 560–61 (citations and quotation marks omitted).  Each element must be

25  supported in the same way as any other matter on which the Plaintiff bears the burden of

26  proof.  *Id.* at 561 (citations omitted).  Here, Trunk must adequately allege injury such as

27  would give him standing.  *Id.* (citation omitted).

28  / / /

3

1    Even though other parties briefed this issue, the burden is ultimately on Trunk to
2    demonstrate he has standing.  The Court thus looks first to Trunk's response to the OSC,
3    to see whether he has established this Court's jurisdiction to consider his claims.

**II.    Discussion**

5    H.R. 5683, enacted as Public Law 109-272, purports to take the property at issue
6    here to be used as a veterans' memorial.  As the FAC frames it, Trunk's primary injury
7    consists of the imminent harm he will suffer if the property at issue is taken by the United
8    States with the large cross in place, in order that the property will be used as a veterans'
9    memorial.  His claim, in other words, is that the taking of the property, by itself, violates the
10   Establishment Clause of the U.S. Constitution.  Trunk has also asked for an injunction
11   prohibiting Defendants from displaying the cross on  the site, which is essentially the same
12   relief sought in *Jewish War Veterans*.  (FAC at 11:13–14.)  The OSC was specifically
13   directed, however, at Trunk's challenge to the federal government's acquisition of the
14   property.

15   The Court's ruling in this order is compelled by *Paulson v. City of San Diego*, 475 F.3d
16   1047, 1048 (9th Cir. 2007).  There, the Ninth Circuit set forth several holdings binding on this
17   Court.  First, the City of San Diego (the "City") has been completely divested of any interest
18   in the property at issue here by unilateral action of the federal government without the City's
19   involvement.  *Id.* at 1048–49.  Second, previous injunctive relief requiring the removal of the
20   cross from the property at issue was granted to enforce provisions of the California state
21   constitution, to which the federal government is not subject.  *Id.* at 1048.  Taken together,
22   these two holdings make clear any claim Trunk may have had based on violations of the
23   California state constitution is now moot and any future relief Trunk may obtain must be
24   based solely on federal law.  No party has argued the taking at issue here removed the
25   property from the effects of federal law, including the U.S. Constitution's Establishment
26   Clause. This Court therefore lacks jurisdiction to entertain questions of whether the taking
27   violated the California constitution, or to grant relief based on events that were the subject
28   of earlier litigation.  *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40

L.Ed.2d 164 (1974) (*per curiam*) (holding federal courts lack jurisdiction to decide moot questions). These holdings also make clear the taking was the work of the federal government and therefore not "fairly traceable" to any action by the City. *See Lujan*, 504 U.S. at 560.

The OSC took care to point out the fact that a large cross is located on particular mountain is not an Establishment Clause violation, nor was government ownership or non-ownership of land on Mt. Soledad, nor were mere efforts by officials or voters who wished the cross to remain where it was. The Establishment Clause violation, if any, consists of government endorsement of religion. How the U.S. government may use the property, assuming the property is successfully acquired, is to be decided at a later stage.

The FAC says this action arises under the Establishment Clause of the U.S. Constitution as well as certain provisions of the California state constitution. (FAC at 1:22–26.) To the extent Trunk seeks to invalidate the transfer, it is clear the state constitutional provisions cannot give rise to a cause of action and, as pointed out by the Ninth Circuit, such a claim is moot. *Paulson v. City of San Diego*, 475 F.3d at 1048. It is likewise clear Trunk has no standing to bring any claim against the City arising out of the transfer, because the transfer is not "fairly traceable" to any action by the City. *Id.* at 1048–49; *see also Lujan*, 504 U.S. at 560. The OSC therefore also specifically directed Trunk to focus on actions taken by the United States, rather than the City, and on the U.S. Constitution rather than on the California state constitution. (OSC at 5:1–17.)

## A. Theories of Standing

Trunk has alleged or alluded to three theories of standing, although he does not clearly differentiate among claims to which each theory might apply. He alleges general taxpayer standing, although the injury as he frames it is the transfer of the land, not the illegal expenditure of tax money. He alleges standing as a result of being denied use of the veterans memorial as it now exists. He has also suggested that the transfer itself gave him standing, because it prevented the enforcement of an injunction requiring the removal of the cross.

### 1.    Denial of Use

Trunk alleges he is a veteran and a resident of San Diego and would visit the memorial if the cross were removed.  While this may affect his standing to challenge how the veterans memorial is operated, *see Buono v. Norton*, 212 F. Supp.2d 1202, 1212–13 (C.D.Cal. 2002) (holding that presence of cross prevented plaintiff from freely using the public land), it has no bearing on whether he has standing to challenge the taking of the property.  The taking itself merely transfers ownership and does not by itself affect whether Trunk will be able to use the memorial.  Trunk concedes he has no interest in seeing the memorial operated by the City rather than the federal government.  (Trunk's Response to OSC, at 5:12–13.)

### 2.    Taxpayer Standing

Trunk has also alleged status as a taxpayer, because he pays federal, state, and local taxes.  The Supreme Court has carved out a narrow exception to the general bar on taxpayer standing.  In *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the Supreme Court recognized taxpayer standing to bring Establishment Clause challenges to expenditures under the Taxing and Spending Clause of the U.S. Constitution, Art. I, § 8.  392 U.S. at 105–06.  Trunk <u>may</u> have standing under this precedent because Public Law 109-272 provides for payment to the property owner.  Pub. L. 109-272, § (2)(b), 120 Stat. 771 (2006).

The power of eminent domain is an attribute of sovereignty, and is limited by the Just Compensation Clause of the Fifth Amendment.  *United States v. 0.95 Acres of Land*,  994 F.2d 696, 698 (9th Cir. 1993).  A taking of land is thus not an exercise of Congress' taxing and spending power, although to provide the owner with the required "just compensation," some spending must generally take place.  The Supreme Court's recent holding in *Hein v. Freedom From Religion Foundation, Inc.*, 127 S.Ct. 2553, 2569 (2007) emphasizes the narrowness of the *Flast* exception.  The Supreme Court suggested in *Hein* that the *Flast* exception is limited to Establishment Clause challenges that implicate Congress' taxing and spending power.  127 S.Ct. at 2569 ("We have similarly refused to extend *Flast* to permit

6

taxpayer standing for Establishment Clause challenges that do not implicate Congress' taxing and spending power.") *Cf. Flast*, 392 U.S. at 105–06 ("[W]e hold that a taxpayer will have standing consistent with Article III to invoke federal judicial power when he alleges that congressional action under the taxing and spending clause is in derogation of those constitutional provisions which operate to restrict the exercise of the taxing and spending power.")  In so holding, the Court specifically reaffirmed the limitations it imposed in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 479–82, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), where it refused to extend taxpayer standing to actions taken pursuant to the Property Clause of Art. IV.

*Hein* presents particular interpretive problems for the Court, because it was decided after the parties had briefed the issue and therefore they did not address it, and because it was issued by a divided panel.  The Court believes the natural reading of the language of this opinion is that when a Congressional act implicates the taxing and spending power, taxpayer standing is not precluded.

Because Public Law 109-272 implicates Congress' taxing and spending power, the dicta in *Hein* appear to direct this Court to find taxpayer standing on this basis.  This assumes, of course, other elements of Article III standing are also established.  *Kurtz v. Baker*, 829 F.2d 1133, 1140 (D.C.Cir. 1987) ("[A] taxpayer's ability to meet the *Flast* test does not bestow automatic standing.  More is required.") (citing *Valley Forge*, 454 U.S. at 480 n.17) (further citations omitted).  The Supreme Court's dicta are entitled to deference by this Court.  *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000).  This is not to say standing can be found to bring an Establishment Clause challenge to any acquisition of land alleged to be for religious purposes, because a taking does not necessarily implicate the Taxing and Spending Clause, *e.g.*, where an owner waives just compensation either gratuitously or in exchange for non-monetary benefits.  *Cf. Buono v. Kempthorne*, ___ F.3d ___, 2007 WL 2493512, *12–*13 (9th Cir. 2007) (holding that an exchange of land violated an existing injunction designed to remedy Establishment Clause violation).

1    While no amount of "just compensation" has yet been set and it is theoretically

2    possible compensation may be disclaimed or the property may be found to have no real

3    value, Public Law 109-272 contemplates and authorizes payment of compensation. An

4    additional difficulty is that Public Law 109-272 authorizes the expenditure of funds already

5    appropriated as part of the permanent judgment appropriation under 31 U.S.C. § 1034 and

6    is more in the nature of a settlement. The Court concludes, however, this falls within the

7    meaning of an appropriation as contemplated by *Flast* and *Hein*, because it authorizes the

8    expenditure of money. *See Hein*, 127 S.Ct. at 2559 (recognizing the *Flast* exception as

9    permitting challenges to Congressional action that authorizes the use of federal funds).

10   Exercise of the federal spending power is thus likely and imminent. The Court therefore

11   concludes Trunk may have standing as a taxpayer to challenge the taking, but only if other

12   requirements for Article III standing are met.

### 3.    Interference with Enforcement of Injunction

14   Previously, the City, was subject to an injunction requiring it to remove the cross from

15   the property at issue here. *Paulson v. City of San Diego*, 475 F.3d at 1048. The Ninth

16   Circuit has recognized the United States was not in violation of the California state

17   constitution and was not subject to the injunction, and its actions mooted the injunction. *Id.*

18   at 1048–49. In effect, Trunk is arguing his injury stems from the fact that he is no longer

19   being injured by violations of California law and thus, the particular remedy he sought is no

20   longer available.

21   Clearly, Trunk would prefer above all else that the California constitutional violations

22   were brought to an end by removal of the cross. However, his wishes, by themselves,

23   cannot give rise to standing. Trunk had an interest in having his injury under California's

24   constitution end, but he had no protected interest in having that injury brought to an end in

25   the manner of his choosing. The injunction, issued pursuant to the California state

26   constitution, was designed to remedy violations of the state constitution. *Paulson*, 475 F.3d

27   at 1048. Now those violations have ended, he has no standing to complain about the

28   / / /

1 manner in which they ended. Any other holding would represent an end-run around the

2 Ninth Circuit's finding of mootness.

3      In a more general sense, Trunk might be understood to be arguing the inconvenience

4 of litigating anew constitutes injury sufficient to support Article III standing. The OSC

5 observing that, while convenience and efficiency of litigation was a laudable goal, there was

6 no showing inconvenience of litigation, by itself, could constitute an injury giving rise to

7 Article III standing. (OSC at 5:26–6:3) (citing Fed. R. Civ. P. 1, *Lujan*, 504 U.S. at 560). In

8 any event, Trunk has now abandoned this argument. (Trunk's Response to OSC, at

9 14:1–3.)

10      This is a different situation from that presented in *Buono*, ___ F.3d ___, 2007 WL

11 2493512, slip op. at *10–*14 (concluding that federal government's attempt to transfer land

12 on which cross was located to private parties was impermissible, where the federal

13 government was already under an injunction to remove the cross in order to comply with

14 U.S. Constitutional requirements). In that case, the attempted transfer of the land by the

15 United States was found to be an attempt to evade the injunction to which the United States

16 was already subject, and inadequate as a means of ending the Establishment Clause

17 violation; the transfer by itself was not held to be an independent Establishment Clause

18 violation. Furthermore, the Ninth Circuit held the federal government was attempting to

19 evade requirements by which it was bound, whereas in this case the federal government is

20 clearly not bound by California state constitutional requirements, which are more stringent

21 than the U.S. Constitution's requirements. *See American Family Ass'n, Inc. v. City and

22 County of San Francisco*, 277 F.3d 1114, 1123 (9th Cir. 2002) (explaining that California's

23 "No Preference" clause is interpreted more expansively than the U.S. Constitution's

24 Establishment Clause in cases where government approval of religion is at stake) (citation

25 omitted). *Compare, e.g.*, *Access Fund v. U.S. Dept. of Agriculture*, 499 F.3d 1036, 1044 (9th

26 Cir. 2007) (citing with approval examples of federal protection of certain religious buildings

27 as landmarks), *with Frohliger v. Richardson*, 63 Cal.App. 209, 217 (Cal. App. 1 Dist. 1923)

28 / / /

(holding that California constitution forbade public maintenance of California missions in spite of their undoubted historic significance).

### B. Request for Encouragement to Abide by the Settlement Agreement

Trunk agrees his request that the Court admonish the parties abide by a settlement agreement reached in an earlier case (FAC at 11:15–16) is not a justiciable claim, (Trunk's Response to OSC, at 2:17–19), and the Court holds this claim to be non-justiciable.

### C. Effect of California Law

Previously, Plaintiff Paulson was successful in obtaining an injunction on the basis of California state law requiring the City to remove the cross from its property on Mt. Soledad. *Paulson v. City of San Diego*, Civ. No. 89-0820GT, 2006 WL 3656149 (S.D.Cal. May 3, 2006). That injunction became unenforceable, however, when Public Law 109-272 was enacted, purporting to transfer the Mt. Soledad property to the federal government. *Paulson*, 475 F.3d at 1048 (remanding with instructions to vacate the injunction as moot).

In the OSC, the Court admonished Trunk to focus on the U.S. Constitution rather than state law. (OSC at 5:11–17.) In referring broadly to the United States' alleged efforts to "save the cross," however, Trunk has conflated California and U.S. law. As discussed more fully below, "saving the Cross" cannot mean shielding the cross from U.S. Constitutional requirements, but can only refer to California state law. Trunk's argument is thus, essentially, that the United States acted improperly by evading California law.

Public Law 109-272 was enacted, in part, as a reaction to the extensive litigation of these matters. The statute frankly states, as one of its findings, the following: "76 percent of the voters of San Diego supported donating the Mt. Soledad Memorial to the Federal Government only to have a superior court judge of the State of California invalidate that election," Preservation of Mt. Soledad Veterans Memorial, Pub. L. 109-272, § 1(6),120 Stat. 770, referring apparently to the superior court judgment later reversed in *Paulson v. Abdelnour*, 145 Cal.App.4th 400 (Cal.App. 4 Dist. 2006).

Trunk relies heavily on the federal government's apparent intention to avoid the force of California constitutional requirements as evidence of its nefarious motive. In enacting its

own statutes, the United States is of course not limited by or subject to the California constitution, *Paulson*, 475 F.3d at 1048, and therefore cannot be liable for either violating or evading it. As the Ninth Circuit held, *id.*,Trunk therefore had no interest in the injunction the United States was bound to respect. *See Lujan*, 504 U.S. at 560 (explaining that an "injury in fact" sufficient to confer standing refers to "an invasion of a legally protected interest"). The fact the United States wished the Mt. Soledad property to be subject solely to federal law is therefore not in itself improper and did not result in any cognizable injury to Trunk.

The Ninth Circuit held the taking put an end to any California constitutional violation by the City. *Paulson*, 475 F.3d at 1048–49 (Plaintiffs' appeal became moot with the City's divestment of its interest in the memorial) (citation omitted). Obviously, Trunk would have preferred that the violation was remedied by removing or altering the cross; but, as a matter of law, it appears any means by which the alleged violation was brought to an end would bar injunctive relief. The Court specifically directed Trunk to explain why this was not the case, citing *Palmer v. Thompson*, 403 U.S. 217, 227 (1971) (declining to require city to continue to operate swimming pools after Constitutional problem of operating pools in a racially segregated manner was brought to an end by closing the pools) and *Evans v. Abney*, 396 U.S. 435, 447 (1970) (declining to intervene further after Constitutional violation was ended by state's decision to divest itself of park accepted on condition that it be operated in a racially segregated manner). Trunk, however, declined to do so, and asserted the question was dealt with by *McCreary County, Ky. v. American Civil Liberties Union of Ky.*, 545 U.S. 844, 125 S.Ct. 2722 (2005), which he claimed was "directly on point," without citing any particular portion of that opinion. (Trunk's Response to OSC at 5:22–27.) *McCreary* does not, however, examine the issue of Article III standing or the effect of a transfer of ownership on the justiciability of an Establishment Clause claim.

The United States will be required to abide by the same U.S. Constitutional requirements as was the City. Because violations of the California constitution have ended

/ / /

11

and thus do not require redress, it does not appear invalidating the transfer would redress any injury done to Trunk.

### D. Taking of Land as an Establishment Clause Violation

Trunk has argued Public Law 109-272 should be declared void *ab initio* because it was enacted in violation of the Establishment Clause. He argues that, because the United States' apparent objective in enacting this legislation was to "save the cross," the mere enactment of the law constitutes an Establishment Clause violation. (Trunk's Response to OSC at 5:2–7, 5:14–17, 6:15–18, 8:20–22.)

This argument suffers from two infirmities. First, even accepting Trunk's allegations, the taking was at most a step taken in preparation for the later action Trunk wishes to challenge; it did not, by itself, injure Trunk. Allegedly illicit plans or motives are not themselves cognizable injuries, particularly where it is not yet apparent what the government will actually do. Second, Public Law 109-272 does not "save the cross," at least not in the way urged by Trunk.

### 1. Injury to Trunk

While it is understandable how a taking might fall afoul of the First Amendment's Free Exercise Clause, especially where the government targets a property owner for religious reasons, it is unclear whether a taking, by itself, might ever violate the Establishment Clause. More importantly, it is unclear how such a taking could cause an injury sufficient to give an individual Article III standing to bring an Establishment Clause challenge to a taking. A taking is merely an acquisition of land by the government, Black's Law Dictionary 1493 (8th Ed. 2004), and does not, in and of itself, include any religious or potentially religious elements. Trunk cites *Cottonwood Christian Center v. Cypress Redevelopment Agency*, 218 F. Supp.2d 1203 (C.D.Cal. 2002) as an example of such a case, but in fact the holding there was based on the Free Exercise Clause. The Plaintiffs in *Jewish War Veterans* ("JWV Plaintiffs"), likewise, cite several First Amendment cases where takings were challenged, but all are based on the other First Amendment clauses and not the Establishment Clause. (JWV Plaintiffs' Response to OSC, at 5:11–6:6.)

12

Furthermore, the Court is unaware of any case where a person with no ownership or occupancy interest in property has been found to have standing to challenge a taking of that property. *See, e.g.*, *Haldeman v. Freeman*, 558 F. Supp. 514, 518 n.10 (D.D.C. 1983) ("[T]he owner of the targeted property is the only person with standing to object to condemnation proceedings.") (citing *Benitez v. Bank of Nova Scotia*, 141 F.2d 943, 951 (1st Cir. 1944), *C.M. Patten & Co. v. United States*, 61 F.2d 970, 972–73 (9th Cir.), *vacated as moot*, 289 U.S. 705, 53 S.Ct. 687, 77 L.Ed. 1462 (1932)) (further citations omitted). Of the cases cited by Trunk or the JWV Plaintiffs, none found standing where a party challenging a taking did not hold an ownership interest in the property at issue.

Trunk concedes the Establishment Clause does not forbid the United States to take property with existing religious symbols on it. (Trunk's Response to OSC at 11:6–9.) Rather, he contends because he believes the United States intends to use the property for the unconstitutional purpose of endorsing religion, the taking itself is invalid. (*Id.* at 10:24–26, 11:12–17, 11:27–12:4 ("[T]he 'purpose' of the taking and its 'effect' under the *Lemon* test, was to save the cross and promote religion . . . .") (italics added) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105 (1971)).) In so arguing, Trunk suggests that the transfer of land will necessarily entail permanent display of the cross.

Although Public Law 109-272 mentions the existing cross, it does not require the continued display of the cross on Mt. Soledad, nor does it even require the federal government to manage the property. Rather, it takes ownership of the property to be used as a veterans memorial, describing the memorial in terms of the boundaries of the land only. Pub. L. 109-272, § 2(d), 120 Stat. 771. While the gist of the findings make clear Congress considered the memorial as it existed to be historically significant and hoped it would remain in its present condition, this is not specifically provided for or required in the statute.

Public Law 109-272 merely provides for the acquisition of land, the compensation of the land's owners, and the maintenance of the property as a veterans memorial. These are not religious actions, nor do they injure Trunk. Trunk himself has conceded it makes no difference to him who maintains the property, and in fact he wants it to be operated as a

veterans memorial. Trunk appears to be arguing that because the federal government was planning to violate his rights by maintaining a cross on the property it was acquiring, he has standing. This does not, however constitute the kind of "concrete and particularized" required for standing. *Lujan*, 504 U.S. at 560.

### 2. Intent to "Save the Cross"

As discussed, the United States' alleged intent to "save the Cross" was only with regard to a controversy regarding the application of state law, which of course does not bind the United States. In other words, by taking the property, the federal government was at most removing the memorial from divisive and protracted litigation under state law. Trunk has not argued the federal government was attempting to "save the Cross" from the requirements of the Establishment Clause. And, in any event, the taking cannot do so.

This is borne out by Public Law 109-272, whose findings, as noted above, indicate the United States believed the Superior Court unnecessarily blocked a democratic solution to the controversy. Publ. L. 109-272, 120 Stat. 770, § 1(6). The statute makes clear the federal government believed the state, acting through the Superior Court, was behaving in a manner tending to undermine public confidence in courts and the democratic process, and the federal government believed removal of the property from state control was in order. The federal government's position was later vindicated in *Paulson v. Abdelnour*, 145 Cal.App.4th at 428–29 (rejecting trial court's determination that the ballot measure was a "sham" and observing "any judicial attempt to discern or ascribe a hidden purpose behind a vote of the electorate would create rather than dispel divisiveness").

As a way of showing concrete injury, Trunk tries to conflate acquisition of the Mt. Soledad property with unconstitutional operation of the property. (Trunk's Response to OSC at 8:8–10, 9:6–24, 10:24–28.) As noted, Public Law 109-272 does not specifically require the operation of the property in question in any particular manner. It is far from a legal certainty the United States cannot under any circumstances Constitutionally carry out the provisions of Public Law 109-272, including permitting the operation of the property as a veterans memorial by the Mt. Soledad Memorial Association. *See* Pub. L. 109-272, § 2(c),

14

120 Stat. 771 (providing for the continued maintenance of the veterans memorial by the Mt. Soledad Veterans Memorial Association).

Even assuming the cross remains unaltered in its present location — which is not a requirement of Public Law 109-272 — it is misleading to contend that "no federal case has ever found the display of a Latin cross on public land to be constitutional." (Trunk's Response to OSC at 8:10–11) (citing *Mendelson v. City of St. Cloud*, 719 F. Supp. 1065, 1069 (M.D.Fla. 1989)). It may have been true at the time *Mendelson* was issued, but the Supreme Court's holding in *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 115 S.Ct. 2440 (1995) is to the contrary. *See also Buono v. Norton*, 371 F.3d 543, 545–46 (9th Cir. 2004) (holding that Establishment Clause claim was not yet moot because land on which cross was displayed was still operated by the National Park Service and had not yet been transferred to private owners); *but see id.* at 546 (noting that presence of a religious symbol on land transferred into private hands might still violate the Establishment Clause, but reserving the question).

Both *Pinette* and *Buono* suggest Public Law 109-272 does not inevitably translate into in an Establishment Clause violation. In order to determine whether Trunk was unavoidably injured by the taking, the Court would have to consider hypothetical alternative scenarios under which the memorial might be operated. It is thus doubtful this injury is "actual or imminent," *Lujan*, 504 U.S. at 560. Certainly it is not ripe. *Wheeler v. Barrera*, 417 U.S. 402, 426–27, 94 S.Ct. 2274, 2288 (1974) (where the Court would have to consider possible arrangements for sending publicly-funded teachers into parochial schools, Establishment Clause issue was not ripe).

The Court does not reach the issue of whether the taking would violate the *Lemon* test if Trunk had standing to challenge it. Nevertheless, the Court notes the acquisition of property is itself a secular purpose, and that a statute falls afoul of the first prong of *Lemon* test only when it is "entirely motivated by a purpose to advance religion," *Wallace v. Jaffree*, 472 U.S. 38, 56, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985), or "there [is] no question that the statute or activity [is] motivated wholly by religious considerations," *Lynch v. Donnelly*, 465

U.S. 668, 680, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) . *See also Bowen v. Kendrick*, 487 U.S. 589, 602, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988) (explaining that a court "may invalidate a statute only if it is motivated wholly by an impermissible purpose"). In particular here, the acquisition of property for a veterans memorial is a secular purpose. Trunk himself recognizes this when he argues he is now being denied use of the veterans memorial, and if the cross is removed, he will visit the veterans memorial and pay tribute to the veterans it memorializes. (FAC at 4:3–6.)

Furthermore, the taking, by itself, would not fall afoul of *Lemon*'s "effects" or "excessive entanglement" prong because, as noted, the taking has no effect on the Establishment Clause's application to the property at issue. *See Agostini v. Felton*, 521 U.S. 203, 232, 117 S.Ct. 1997, 2015 (1997) (explaining the second and third prongs of the *Lemon* test — the "effects" and "excessive entanglement" prongs — were similarly assessed).

**E.     Effect of Invalidating Public Law 109-272**

Separately, the City first attempted to donate the property to the federal government by Proposition A, a municipal ballot measure; and the United States, by Public Law 108-447, designated the site as a veterans memorial and expressed its intent to accept the donation. This attempt was initially thwarted when the San Diego County Superior Court invalidated the measure, as noted in *Paulson v. Abdelnour*, 145 Cal.App.4th at 411–12. Thereafter, Public Law 109-272 was enacted. Later still, however, the California Court of Appeals reversed the Superior Court. *Id.* at 439. Pursuant to the Supremacy Clause, however, Public Law 109-272 trumps the municipal measure.

Assuming this Court were to invalidate Public Law 109-272, the City's attempted donation of the property to the federal government would then be effective and the property would be transferred to the United States pursuant to that measure. This alternative arrangement would eliminate the expenditure of funds by the federal government, which Trunk must rely on as the injury giving him standing. *See Flast*, 392 U.S. at 106 (holding taxpayer standing arises from injury suffered when " tax money is being extracted and spent in violation of specific constitutional protections against such abuses of legislative power").

1   Invalidating the transfer would also deprive the City — to which Trunk also pays taxes — of

2   any claim to "just compensation," creating a corresponding loss.  The transfer, however,

3   would be accomplished, such that regardless of how this Court rules, in the end the property

4   will be transferred from the City to the United States.  The only tangible difference would be

5   whether the United States pays the City for the property or not.

6       The question arises, then, whether Trunk has suffered any "distinct and palpable"

7   injury if one sovereign to whom Trunk pays taxes transfers funds to another sovereign to

8   whom he also pays taxes, because the alleged injury is offset by a corresponding benefit.

9   *See Valley Forge*, 454 U.S. at 480 n.17 (noting that effect of challenged property transfer

10  on plaintiffs' tax burden would likely be inconsequential, and therefore plaintiffs could not

11  establish they would likely benefit in any tangible way from the court's intervention).  Trunk

12  has not attempted to show a tangible benefit related to his taxes if the transfer were

13  invalidated.  Nor can the Court say with any certainty he would receive any tangible benefit

14  if the Court invalidated the transfer.  The Court's intervention would resolve nothing except

15  whether the United States obtains the property by taking it, or by donation.

16      Plaintiff makes clear the relief he actually wants is transfer of the land back to the City.

17  The Court cannot grant this relief.  Regardless of how the Court rules on Trunk's request to

18  invalidate Public Law 109-272, the United States will own the land at issue here.

19      **F.      Application of Article III Standing Requirements**

20      Looking at the three elements of standing required under *Lujan*, Trunk has not shown

21  he has suffered an "injury in fact," consisting of "an invasion of a legally protected interest

22  which is . . . concrete and particularized and . . . actual or imminent, not conjectural or

23  hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted).  Trunk has

24  therefore not shown any causal connection between action by the United States and any

25  such injury.

26      Furthermore, even if this Court were to give Trunk everything he is asking for, the

27  property in question would still be transferred to the United States, pursuant to the municipal

28  / / /

1  ballot measure and Public Law 108-447.  Thus, even if the transfer injured Trunk, the injury

2  would not be redressed by a favorable decision.  *See id.* at 561.

3      For these reasons, Trunk lacks Article III standing to pursue his claims regarding

4  Public Law 109-272.

5          **G.    Political Question Doctrine**

6      As discussed in the OSC, the Court is concerned the Political Question Doctrine might

7  deprive it of jurisdiction, and even if not, that Separation of Powers principles counsel

8  abstention.  Because the Court holds Trunk has no standing to challenge the taking of the

9  Mt. Soledad property, the Court does not reach these issues.  *No GWEN Alliance*, 855 F.2d

10 at 1382.

11 **III.    Conclusion and Order**

12     Trunk has not met his burden of demonstrating he has standing to challenge the

13 taking of the Mt. Soledad property by Public Law 109-272.  This claim is therefore

14 **DISMISSED** for lack of jurisdiction.  His requests for a declaration that the taking violated his

15 California state constitutional and U.S. Constitutional rights, and for the Court to encourage

16 the parties to abide by the earlier settlement agreement are likewise **DENIED** for lack of

17 jurisdiction.

18     The City has made clear it does not wish to remain a party to this action.  (City's

19 Response to OSC at 2:14, 6:11–17.)  Because it appears there is no just cause to delay

20 entry of judgment as to the claims dismissed by this Order, the Court hereby **ENTERS**

21 **JUDGMENT** as to these claims, pursuant to Fed. R. Civ. P 54(b).  This order disposes of any

22 interest the City of San Diego may have in this dispute.  The City is therefore **DISMISSED**

23 as a party, and is excused from further filing and participation requirements.

24     In light of the previous consolidation of these cases, the dismissal of most of Trunk's

25 claims, and the similarity of Trunk's remaining claim to those of the other Plaintiffs, it appears

26 joint pleadings and filings by Plaintiffs would promote efficiency.  Plaintiffs are **ORDERED**

27 to show cause why they should not file future pleadings (with the exception of their own

28 motions for summary judgment) jointly.  They may do this by filing memoranda of points and

authorities no more than three pages in length, no later than ten calendar days following the issuance of this order. Any other parties may likewise submit a memorandum of points and authorities within the same time limit, subject to the same page limitation, giving their position. The parties are requested to focus primarily on legal authority for or against requiring joint filings, rather than prudential concerns.

**IT IS SO ORDERED**.

DATED:  November 6, 2007

_Larry A. Burns_

**HONORABLE LARRY ALAN BURNS**
United States District Judge