UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEWISH WAR VETERANS OF THE
UNITED STATES OF AMERICA, INC.,
et al.,

        **Plaintiffs,**

        v.

ROBERT M. GATES,
Secretary of Defense, in his official capacity.

        **Defendant.**

Misc. Nos. 07-220, 07-221, 07-222 (JDB)

## ORDER

On September 18, 2007 this Court issued an Order and an accompanying Memorandum Opinion requiring that Congressmen Darrell E. Issa, Brian P. Bilbray, and Duncan Hunter (collectively "the Members") disclose certain documents to plaintiffs, the Jewish War Veterans of the United States of America, Inc. (hereinafter "JWV"). See Jewish War Veterans v. Gates, 506 F. Supp. 2d 30, 62-63 (D.D.C. 2007). In particular, this Court ordered the Members to produce documents responsive to JWV's subpoena specifications 1, 2, 4 and 6. Additionally, the Court also ordered the Members to produce documents responsive to JWV's specifications 3, 5, 7 and 9 that were not protected by the Speech or Debate Clause as construed by this Court in its Memorandum Opinion. As to the documents that the Members, applying the standards established by this Court, believed were protected by the Clause, the Order instructed them to indicate by not later than October 4, 2007 that the privilege applied. Rather than comply with the terms of the Order, the Members filed a Notice of Appeal on September 27, 2007. They did not,

1

however, initially file a corresponding motion to stay the Order with this Court, perhaps operating under the misconception that their appeal automatically stayed these proceedings and their obligations. In any event, the Members did belatedly move to stay this Court's Order, and that motion, now fully briefed, is currently before the Court. For the reasons set forth below, the Court will grant in part and deny in part the Members' motion for stay pending appeal.

## STANDARD OF REVIEW

The standard for granting a motion for stay pending appeal is well-established in this Circuit. To prevail on such a motion, a party must show:

> (1) that it has a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury if the stay is denied; (3) that issuance of the stay will not cause substantial harm to other parties; and (4) that the public interest will be served by issuance of the stay.

United States v. Philip Morris, Inc., 314 F.3d 612, 617 (D.C. Cir. 2003) (citing Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1997)). Furthermore, the D.C. Circuit has explained that the "substantial likelihood of success" prong does not necessarily imply that a party needs to demonstrate a 50% chance or better of prevailing on appeal. Holiday Tours, 559 F.2d at 844. Instead, the moving party can satisfy that element by raising a "serious legal question. . . . whether or not [the] movant has shown a mathematical probability of success." Id. Put another way, "it will ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." Id. (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)).[1]

---

[1] As a threshold matter, JWV argues that the Court's September 18th Order is not a final appealable order. JWV Opp'n at 2. Under 28 U.S.C. § 1291, a party may only take an appeal

## DISCUSSION

**A. The Members' Likelihood of Success on the Merits**

This aspect of the stay analysis requires two separate inquiries because the Members have not raised Speech or Debate Clause objections to documents that are responsive to subpoena specifications 1, 2, 4 and 6. See JWV, 506 F. Supp. 2d at 52. Thus, the Court will first address that category, as to which the Members' objection to producing responsive documents rests entirely on this Court's relevance holding. The Members take the Court to task for "conflating House Rule VIII -- which authorizes Members to respond to judicial subpoenas only if the information sought is, among other things, 'material and relevant' -- with Federal Rule of Civil Procedure 26(b)(1)." Members' Mot. for Stay Pending Appeal (hereinafter "Members' Mot.") at 9. The Members also argue that the Court "applied the wrong substantive law." Id. at 10.

---

from a "final decision" of the district court. Because the Order "initiated a routine discovery process that the Court would monitor and take part in," plaintiffs maintain that it is not a final order because it did not "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." Id. at 3 (quoting Banks v. Office of Senate Sergeant-At-Arms and Doorkeeper of U.S. Senate, 471 F.3d 1341, 1345 (D.C. Cir. 2006)). Plaintiffs add that the Order in question was a discovery order and such orders are ordinarily "not immediately appealable as collateral orders." Id. Instead, they suggest that the Members would have to violate the Order and be held in contempt before reaching the appropriate procedural posture to appeal the Order. The Members respond that McSurely v. McClellan, 521 F.2d 1024 (D.C. Cir. 1975), should guide this Court's decision. Members' Reply at 10. They argue that McSurely held that "a Member of Congress need not go into contempt in order to obtain appellate jurisdiction to challenge a denial of his invocation of the Speech or Debate privilege." Id. JWV counters that the passage relied on in McSurely is mere dictum and that, in any event, the D.C. Circuit has subsequently cabined the line of privilege cases based on United States v. Nixon, 418 U.S. 683 (1974) -- which they argue McSurely "relied upon" -- to instances involving the President himself. JWV Opp'n at 4. JWV raises a strong argument that the September 18th Order is not appealable, but there is also some force to the Members' position that contempt should not be required for an appeal. Under the circumstances, this Court will defer to the D.C. Circuit on an issue of its appellate jurisdiction, and therefore will assume the Members' appeal is proper for purposes of this stay motion.

The Court has no difficulty concluding that the Members do not have a substantial likelihood of success with respect to these issues. Indeed, the Members have failed to raise even a "serious, substantial, difficult [or] doubtful" legal question. Holiday Tours, 559 F.2d at 844 (internal citations omitted). The Members insist that complying with the Court's Order will force them to violate House Rule VIII -- which they maintain has constitutional dimensions -- because the information sought by plaintiffs is not "material." Members Mot. at 10. The argument draws heavily from the Rulemaking Clause, which provides: "Each House may determine the rules of its proceedings, punish its members for disorderly behavior, and, with the concurrence of two thirds, expel a member." U.S. Const. Art. I, § 5, cl. 2.[2]

The Court is not persuaded by the Members' argument. As plaintiffs correctly note, the Rulemaking Clause, and Rule VIII in particular, "relate[] to the House's own internal governance, and do[] not extend to allow the House to exempt itself unilaterally from the requirements of civil litigation overseen by the judiciary." JWV Opp'n at 8. The Members, for their part, declare that they are not "trying to exempt themselves from Federal Civil Rule 26," but rather they maintain that House Rule VIII "only . . . creates an additional, judicially enforceable, standard that must be satisfied when discovery is sought from Members of the House." Members' Reply at 5. But in this context at least, the end result of creating an additional hurdle in the form of House Rule VIII is indeed the effective equivalent of exempting the House from the reach of Fed. R. Civ. P. 26. Surely any document that qualifies as "material" for purposes of Rule VIII would also satisfy Rule 26's relevancy requirement. Thus, materiality, as the Members would have it,

---

[2] Although the Members did not press this argument during prior proceedings, the Court will not find that it has been waived for purposes of appeal and this stay motion, again leaving the issue to the Court of Appeals in the first instance.

would be the sole standard governing the House in discovery. The Rule 26 standard would be replaced with a higher standard when there is a congressional party in civil litigation. Taken to its logical conclusion, then, the Members essentially argue that one house of Congress, if it so chooses and <u>solely</u> based on the Rulemaking Clause, may unilaterally displace the entirety of the Federal Rules of Civil Procedure by internal rules such as Rule VIII.

Tellingly, the Members point to no authority to support this remarkable proposition.[3] Indeed, there is no indication that this position has ever before even been advocated. <u>Goland v. CIA</u>, 607 F.2d 339 (D.C. Cir. 1978), cited by the Members, is no aid to them. In <u>Goland</u>, the D.C. Circuit wrote that "Congress has undoubted authority to keep its records secret, authority

---

[3] Pursuant to the Rules Enabling Act, the Federal Rules of Civil Procedure, and amendments thereto, are initially promulgated by the Supreme Court and then undergo a process of congressional review and "approval." <u>See</u> 21 U.S.C. §§ 2071-77. Although not technically statutes in their own right, the Federal Rules of Civil Procedure govern the process of litigation before Article III courts under the authority of the Rules Enabling Act. Congress, of course, may seek to overturn the reach of Rule 26 where it is involved by passing a bill and sending it to the President for signature consistent with the Presentment Clause. But seeking to accomplish that same result via Rule VIII and the Rulemaking Clause is a different matter. The House Rules are adopted at the start of each Congress via a House of Representatives resolution. <u>See</u> H.R. Doc. No. 109-157, at v (2007) ("The rules for the One Hundred Tenth Congress were adopted on January 4 and 5, 2007, when the House agreed to House Resolution 6 in five divided titles."); <u>see also</u> Wm. Holmes Brown & Charles W. Johnson, House Practice: A Guide to the Rules, Precedents and Procedures of the House, 108th Congress, 1st Session at 823 (2003) (explaining that the House Rules are adopted by "simple resolution"). Thus, the House Rules do not have the force of law outside of the House itself as they are not enacted legislation within the meaning of the Presentment Clause. <u>See</u> U.S. Const. Art. I, § 7, cl. 2-3. Accordingly, the Members' contention is that a "simple resolution" by the House of Representatives can preempt the operation of the Federal Rules of Civil Procedure, which are backed by the Rules Enabling Act. That proposition is untenable; indeed, such action would be tantamount to a legislative veto, which the Supreme Court has held to be unconstitutional. <u>See</u> <u>INS v. Chadha</u>, 462 U.S. 919, 958-59 (1983). It is also flatly inconsistent with the methods of federal rulemaking established by the Rules Enabling Act. To this Court's knowledge, neither in the Congressional review process of the Federal Rules of Civil Procedure nor in any previous civil litigation has this House Rule VIII argument ever been presented.

rooted in the Constitution, longstanding practice, and current congressional rules." Id. at 346. The constitutional provision cited by the Goland court, however, was the Journal Clause, which explicitly provides that the journal of congressional proceedings may be kept secret in the sound discretion of Congress. Id. at 346 n.36; see also U.S. Const. art. I, § 5, cl. 3. Unlike in Goland, however, there is no evidence that this case involves the records of congressional proceedings; instead, plaintiffs seek documents retained by the Members in other capacities. Simply put, Goland and the Journal Clause have no application here.

The Court finds that House Rule VIII presents no obstacle to compliance with the Court's Order. Rules promulgated under the authority of the Rulemaking Clause do not have force beyond the internal proceedings of the appropriate House of Congress, and they especially do not strip an Article III court of its traditional authority over the litigation before it. To hold otherwise would, as plaintiffs argue, "give rise to serious separation of powers and other Constitutional difficulties." JWV Opp'n at 8-9. At the very least, it would place this internal House Rule on a collision course with the Rules Enabling Act.

In short, the Court does not believe that the Members' Rule VIII contention amounts to the sort of serious legal question that warrants a stay pending appeal. Similarly, the Members' conclusory statement that the information sought by plaintiffs is "not even remotely relevant, much less material" to their claims fails to constitute a basis for granting the requested stay. Members' Mot. at 11. This Court has held otherwise after careful review, and the Members have not demonstrated in their cursory briefing that they have a substantial likelihood of success on the merits of their appeal on this point. Accordingly, the Court finds that the Members have failed to satisfy the first prong of the stay inquiry with respect to documents responsive to

specifications 1, 2, 4, and 6.

Whether the Members have a substantial likelihood of success on the merits relating to the documents responsive to specifications 3, 5, 7 and 9 is a closer question. The Members assert that some of the documents in this category are shielded by Speech or Debate Clause privilege. They now advance three principal arguments in an attempt to demonstrate that they have a strong likelihood of success on the merits on their appeal. To begin with, the Members argue that the "Court's arrogation to itself of authority to review Member legislative documents" was in error. Members' Reply at 1. According to the Members, the Court erred in relying on United States v. Rayburn House Office Building, 497 F.3d 654 (D.C. Cir. 2007), because the remedy imposed in that case was "wholly unique" to that context and should not be applied to "garden variety document subpoenas." Members' Mot. at 4-5. The prospect of *in camera* review is antithetical to the purposes of the Speech or Debate Clause, in their view, because it would subject the Members to "accountability before a possibly hostile judiciary," id. at 5 (quoting Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 502 (1975)), and should therefore be limited to "extraordinary circumstances like those presented in the Rayburn case." Id. at 7.

In response, JWV correctly notes that the Rayburn majority "drew no distinctions between 'garden variety' discovery" and the particular situation before it. JWV Opp'n at 6. Moreover, as detailed in this Court's decision, the distinction between the Rayburn factual scenario and an "ordinary" subpoena case advanced here by the Members was adopted by Judge Henderson in her concurring opinion in that case. 506 F. Supp. 2d at 62. But that position failed to garner a majority of the panel, and there is nothing in the Rayburn majority opinion that would support the Members' contention here. Nevertheless, although the Court disagrees with the

Members' conclusions concerning the reach of Rayburn, it is apparent that they have raised a serious and substantial legal question that may benefit from further litigation and appellate review.[4]  The Members correctly point out that this issue implicates the scope of a provision of the Constitution explicitly crafted to shield the members of Congress with a constitutionally-based privilege.  The resolution of this question may have implications for members of Congress facing subpoenas in future litigation.  The crux of JWV's contention here is that the Members are unlikely to prevail on appeal because Rayburn is directly on point and controls the outcome of this case.  JWV Opp'n at 5-6.  That may be true, but as Holiday Tours demonstrates, the movant on a motion to stay is not required to show a mathematical probability of success on appeal.  Holiday Tours, 559 F.2d at 844.  The Members' argument concerning Rayburn and its application to this case is not so wholly without merit that it fails to raise a serious legal question; to the contrary, it does just that, as evidenced by Judge Henderson's Rayburn concurrence.

      The Members' second major argument is that the Court's Order requiring them to produce documents that reflect "legislative purpose" contravenes their reading of the Speech or Debate Clause.  Members' Mot. at 8; Members' Reply at 3.  More specifically, the Members argue that legislative purpose is not a standard that has meaning in the Speech or Debate Clause context; in their view, the "purpose" that a document elucidates is simply irrelevant to determining whether or not it is privileged.  Members' Reply at 3.  Put another way, even if a document did reflect legislative purpose as construed by this Court, the Members argue that it is nevertheless protected

---

[4] The Members overstate the likelihood -- to them a near certainty -- that judicial review would follow their review and assertion of privilege under the process established in this Court's Order.  The intent of this Court was that a good faith application of the law to responsive documents by the Members would make judicial review on a document-by-document basis unnecessary, and hence very unlikely.

by the Speech or Debate Clause if it satisfies their preferred test for that privilege.  Id.  That test is derived largely from Eastland and Gravel v. United States, 408 U.S. 606 (1972), and asks whether the document "reflect[s] activities that are an integral part of the deliberative and communicative processes . . . with respect to the consideration and passage or rejection of proposed legislation."  Id. (internal quotations omitted).  Once again, although the Court disagrees with the Members' conclusions on this point, they have raised a serious and substantial legal question for purposes of the stay inquiry.

      The third contention that the Members make relates to documents that reflect "political activities."  Members' Mot. at 8.  The Members state that they are not clear on precisely what the Court's Order requires them to produce.  They explain that "although we are not absolutely certain, it appears that the Court may have categorically excluded from the protections of the Speech or Debate Clause all documents that reflect 'political' activities," and then add that if the Court "intended its ruling to cover documents that have some political component, even if those documents also reflect legislative activities," that holding was in error.  Id.  The Court will now clarify that it did not -- and does not here -- hold that any documents reflecting activities that have a "political" component are categorically precluded from Speech or Debate protection.  Instead, as plaintiffs correctly point out, if those activities "lead directly to legislation," they are within the purview of the Speech or Debate Clause as construed by this Court despite the fact that they may be otherwise characterized as "political."  JWV Opp'n at 7.

      These conclusions on the Members' three arguments, and the serious legal questions presented on the first two, do not necessarily support a stay as to all documents responsive to specifications 3, 5, 7 and 9.  All along, the Members have conceded that there are some

documents responsive to these specifications that are not privileged.  The Members should identify what documents are responsive and, under the Members' view of the Speech or Debate Clause, not privileged.  Only a relevancy objection to production exists for such documents, which the Court concludes is not a basis for granting a stay.

The Members have failed to demonstrate that they have a substantial likelihood of success on the merits, or even present a serious legal question, regarding their appeal of the Court's Order on documents responsive to specifications 1, 2, 4 and 6.  Thus, as this is a required showing for a stay, the Court will deny their motion with respect to those documents.  The Court also denies the Members' motion with respect to documents responsive to specifications 3, 5, 7 and 9 for which the Members <u>will not</u> assert a Speech or Debate Clause privilege based on <u>their</u> reading of the Clause and their review of the documents.  As to those documents, the only objection that the Members can plausibly make to production would be the same relevancy argument that the Court already has rejected as a basis for a stay.  Accordingly, such documents should be produced and are not subject to any stay.  But for documents responsive to specifications 3, 5, 7 and 9 as to which the Members assert a Speech or Debate Clause privilege based on their interpretation of the Clause, the Court concludes that the Members have raised a serious legal question on appeal.

**B. Irreparable Harm**

The Members have generally maintained that their primary injury in complying with the Court's Order flows from judicial inquiry into documents that they believe are privileged under

the Speech or Debate Clause.[5]  See Members' Reply at 6.  But the Members have also maintained that production of the non-privileged documents would cause them to suffer irreparable harm because it would "effectively force them to violate House Rule VIII."  Members' Mot at 12.  That compelled violation, they argue, "could potentially expose them to sanctions" from the House for violating internal rules.  Members' Reply at 7.  JWV correctly points out that the Members cite no authority to support their contention that the possibility of sanction by the House constitutes "irreparable harm."  JWV Opp'n at 9.  Additionally, the Members have not provided the Court with any information concerning the form that a putative sanction would take, nor have they demonstrated how severe any such reprimand would be, particularly given the fact that the Members in this case have already engaged in protracted litigation in an attempt to combat the subpoena at issue.  It would appear to the Court that the Members made a good faith effort to "adhere to the spirit and the letter of the Rules of the House," which the Members state is required by House Rule XXIII.  Members' Reply at 7.  Any threat of a truly injurious sanction seems quite remote.  In any event, the Members have not demonstrated that the mere possibility of some internal sanction constitutes the sort of imminent, concrete, irreparable injury that would support granting a stay.  See Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).

The Members' asserted harm regarding judicial inquiry and the Speech or Debate Clause, however, is another matter.  As discussed above, the Members feel that the possibility of *in*

---

[5] The Court does not actually need to address the Members' irreparable harm arguments with respect to documents responsive to specifications 1, 2, 4 and 6 given the absence of a likelihood of success, or even a serious legal question, on appeal.  The Court notes, however, that because the Members have not asserted a Speech or Debate Clause privilege with respect to those documents, any irreparable injury from producing them is sharply curtailed.  The Members concede that the documents responsive to these specifications are not privileged and thus only the House Rule VIII "harm" -- which the Court rejects -- is relevant to a stay analysis.

*camera* review of privileged documents by this Court itself constitutes harm for purposes of this analysis. Thus, even if "an appellate court might eventually order the return of . . . those documents to the Members," as plaintiffs suggest, that would not ameliorate the harm of judicial examination in the first instance. JWV Opp'n at 9. Indeed, on this view, there would be no way to remedy the harm once incurred. On the other hand, the likelihood of judicial review of privileged documents to assess the Members' Speech or Debate claims remains quite speculative. See supra p.8 n.4. But the Court credits the Members' contention that loss of a "constitutional privilege of critical importance" would constitute the type of harm that is sufficient to satisfy the "irreparable harm" prong of the stay analysis. See Member's Mot. at 12. In fact, the D.C. Circuit has held that the "general injury caused by the breach of the attorney-client privilege" is "clear enough" to establish irreparable harm to a party. Philip Morris, 314 F.3d at 622. The potential infringement of the Speech or Debate Clause privilege is at least as significant as the breach of the attorney-client privilege, and hence there is some risk of irreparable harm here.

**C. Substantial Harm to Other Parties**

Plaintiffs' theory of injury to them is straightforward. To the extent that the Members have in their possession documents that are subject to the Court's Order and would also be helpful to proving plaintiffs' claims in the California litigation, if a stay is granted plaintiffs would lose immediate access to that material. Although they may ultimately prevail on appeal, plaintiffs' November 29, 2007 deadline for filing their final summary judgment brief means that any documents that they receive after that date would have dramatically less utility for them. JWV Opp'n at 10. That is, JWV would be forced to attempt to supplement their filings at a later time, assuming that the District Court in California does not rule on the motion before the

Members finally exhaust all of their appeals here.  Id. at 10-11.

The Members respond that plaintiffs will not be significantly harmed by the stay because "by their own candid admission" the evidence in their case "is not substantially in dispute." Members' Reply at 7.  Moreover, the Members maintain that plaintiffs already have "adequate amounts of evidence" to litigate their claim.  Id.  They also point out that the District Court in San Diego has held that it does not consider "information about Members' motivations and strategies" relevant for the Lemon "purpose" inquiry.[6]  Id. at 8.  They add that any harm that plaintiffs suffer "can be alleviated by . . . moving the San Diego District Court to postpone its ruling on the summary judgment motions pending a ruling by the Court of Appeals in this case." Id. at 9.

The Court finds that this inquiry cuts slightly in the Members' favor.  Although plaintiffs may indeed find information helpful to their case in the disputed documents, they have already filed a lengthy summary judgment motion in the San Diego District Court that appears to be amply supported by factual information.  Members' Reply at 8.  The Court does not mean to diminish plaintiffs' potential harm from an inability to use any additional documents they may acquire, but believes that such harm is not very substantial.  Moreover, to the extent that relevant and potentially useful documents exist in the categories for which the Court will decline to stay production, some of plaintiffs' alleged harm may in fact be alleviated.

**D. Public Interest**

Finally, the Court considers whether the public interest would be best served by granting

---

[6] Plaintiffs maintain that despite the San Diego court's ruling on the Members' motivations and strategies, the documents may still contain information relevant to other prongs of the Lemon analysis.  JWV Opp'n at 10.

a stay in this case. On this point, there is some merit to the contentions of both sides. The Members argue that the public interest would be served by granting the stay because it would enable members of Congress to "perform their duties without interference or harassment from outside parties, including from litigants in private lawsuits." Members' Mot. at 13. In their view, the robust reading of the Speech or Debate Clause that they favor would further "'the right of the people to be fully and fearlessly represented by their elected Senators and Congressmen.'" Id. at 14 (quoting United States v. Myers, 635 F.2d 932, 935-36 (2d Cir. 1980)). On the other side of the equation is JWV's argument that the public has a powerful interest in compelling Congress to obey the command of the First Amendment. Members' Opp'n at 11. In their view, the documents at issue are "potentially critical" to the resolution of a "very public" lawsuit concerning the Establishment Clause. Id.

     Although plaintiffs are correct that the public has a general interest in the vindication of constitutional restrictions on Congressional authority, the balance in this case tips somewhat in favor of the Members where application of the Speech or Debate Clause is involved. The San Diego litigation will proceed regardless of the outcome of this subpoena battle. Plaintiffs may believe that they are missing out on "potentially critical" information, but that belief remains speculative. The Court concludes that granting a partial stay in this single Establishment Clause case will not significantly impair the public's ability to force Congress to comply with the First Amendment. At the same time, compelling the Members to produce documents that they believe are constitutionally privileged may impinge important constitutional rights and could have a very real and immediate impact on the behavior of members of Congress. The public interest is best served, then, by granting a stay with respect to the production of the allegedly privileged

documents responsive to specifications 3, 5, 7 and 9.  On the other hand, there is little public interest to support the Members' request for a stay as to documents that indisputably are not subject to any privilege claim under the Speech or Debate Clause.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Members' motion for stay pending appeal is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that the September 18, 2007 Order is **STAYED** with respect to production of documents responsive to subpoena specifications 3, 5, 7 and 9 as to which the Members assert a Speech or Debate Clause privilege based on their interpretation and application of the Clause; and it is further

**ORDERED** that the Members shall produce, within ten business days from the date of this Order, the following material:

1. Documents responsive to subpoena specifications 1, 2, 4 and 6; and

2. Documents responsive to subpoena specifications 3, 5, 7 and 9 as to which the Members do not assert a Speech or Debate Clause privilege based on their interpretation and application of the Clause.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated:     November 8, 2007