UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEWISH WAR VETERANS OF THE UNITED STATES OF AMERICA, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES MATTIS, Secretary of Defense,<br><br>Defendant,[1]<br><br>v.<br><br>DARRELL ISSA, BRIAN BILBRAY & DUNCAN HUNTER,<br><br>Interested Parties. | Misc. Nos. 07-220, 07-221, 07-222 (JDB) |

## MEMORANDUM OPINION

This motion represents the last gasp of several decades of litigation. The parties were engaged in a long-running dispute over a Latin cross that was displayed on public land in San Diego, California. Related to that litigation, certain plaintiffs sought discovery from Members of Congress, and filed a motion to compel that discovery in this Court. This Court granted in part and denied in part that motion in 2007. The order has since become moot, as the parties and the Court recognized in 2008, leading this Court to dismiss the case. But the Members of Congress sought to vacate this Court's 2007 discovery order. Because vacatur is an extraordinary remedy, and the Court does not believe that the balance of equities weighs in favor of vacatur, the Court will, at long last, deny the motion.

---

[1] Per Federal Rule of Civil Procedure 25(d), Secretary of Defense James Mattis has been substituted for former Secretary of Defense Robert Gates.

1

**BACKGROUND**

A forty-three foot Latin cross has stood atop Mount Soledad in San Diego, California, since 1954.[2] See Trunk v. City of San Diego, 629 F.3d 1099, 1102 (9th Cir. 2011). In 2006, the federal government took possession of the land in accordance with a statute. Id. at 1104–05. Several plaintiffs filed two suits, alleging that the display of the cross violated the Establishment Clause. Id. at 1105. Those suits were consolidated for pretrial purposes. Id. Pursuant to that litigation, a subset of the plaintiffs—who this Court refers to collectively as "Jewish War Veterans" or "JWV"—subpoenaed certain documents from three Members of Congress who led the charge in passing the statute that permitted the federal government to acquire the land: Representatives Darrell Issa, Brian Bilbray,[3] and Duncan Hunter. See Jewish War Veterans v. Gates, 506 F. Supp. 2d 30, 37–38 (D.D.C. 2007).

The Representatives objected to the subpoenas on multiple grounds, including based on their belief that some of the documents were protected by the Speech or Debate Clause of the U.S. Constitution. Id. The plaintiffs in this case therefore filed three motions to compel. Id. at 38. After careful consideration, this Court issued a September 18, 2007 Memorandum Opinion and Order granting in part and denying in part the plaintiffs' motions and laying out a process for determining which documents are protected by the Speech or Debate Clause through in camera review, if necessary. Id. at 60–62. The Representatives appealed this Court's decision to the D.C. Circuit, which dismissed their appeal as unripe because the Representatives had not yet "claimed that any particular document is privileged." See Jewish War Veterans of the United States, Inc. v. Gates, 279 F. App'x 3 (D.C. Cir. 2008) (nonprecedential).

---

[2] For a much more comprehensive background of this litigation, see the Ninth Circuit's opinion in the underlying litigation, and this Court's prior opinion in this discovery dispute. See Trunk v. City of San Diego, 629 F.3d 1099, 1102–05 (9th Cir. 2011); Jewish War Veterans v. Gates, 506 F. Supp. 2d 30, 34–38 (D.D.C. 2007).

[3] Mr. Bilbray is no longer a Member of Congress. This does not affect the Court's analysis.

In 2008, Judge Burns of the District Court for the Southern District of California granted summary judgment to the government in the underlying litigation. See Trunk v. City of San Diego, 568 F. Supp. 2d 1199, 1225 (S.D. Cal. 2008). The parties before this Court agreed that Judge Burns' decision mooted this Court's September 2007 decision, and the plaintiffs acknowledged that they were no longer seeking any additional documents from the Representatives. See Pls.' Praecipe [ECF No. 47]. The Court therefore dismissed this case. See Aug. 20, 2008 Minute Order.

Shortly after this case was dismissed, the Representatives filed the motion at hand asking this Court to vacate its September 18, 2007 order under Federal Rule of Civil Procedure 60(b), so that they could avoid future prejudice from an order as to which they could not obtain appellate review. See Representatives' Mot. [ECF No. 48]. The plaintiffs opposed the motion, arguing that vacatur of a moot order is an equitable remedy, and is not warranted here. See Pls.' Opp'n [ECF No. 49].

In the years since these motions were filed, the underlying litigation has now been completed. The Ninth Circuit reversed the district court, holding that the display of the cross on public land violated the Establishment Clause. See Trunk, 629 F.3d at 1125. Congress then passed a law transferring the land to a private party, thereby eliminating the Establishment Clause violation and mooting the case entirely. See Nat'l Def. Auth. Act for Fiscal Year 2015, Pub. L. No. 113-291 § 2852, 128 Stat. 3292, 3713–15 (2014). In between, the Supreme Court denied certiorari twice, and the district court ordered that the cross be removed. See Mt. Soledad Mem'l Ass'n v. Trunk, 132 S. Ct. 2535 (2012); Trunk v. City of San Diego, 2013 WL 6528884, at *2 (S.D. Cal. Dec. 12, 2013); Mt. Soledad Mem'l Ass'n v. Trunk, 134 S. Ct. 2658 (2014).

3

## ANALYSIS

As the Supreme Court has explained, "'[t]he established practice of the [Supreme Court] in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.'" U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 22 (1994) (quoting United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950)). This "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." Id. at 22–23 (quoting Munsingwear, 340 U.S. at 40). In addition to appellate courts employing this doctrine, district courts have relied on U.S. Bancorp and Munsingwear to vacate their own opinions as well. See Ocean Conservancy v. Nat'l Marine Fisheries Serv., 416 F. Supp. 2d 972, 975–81 (D. Haw. 2006) (granting motion to vacate under Fed. R. Civ. P. 60(b)); Fund for Animals v. Mainella, 335 F. Supp. 2d 19, 25–26 (D.D.C. 2004) (collecting cases)

However, vacatur is an "equitable" and an "extraordinary" remedy. U.S. Bancorp Mortg., 513 U.S. at 26. Thus, the party seeking that remedy bears the burden of demonstrating that the relief is justified. See id. And "[a]s always when federal courts contemplate equitable relief, [they] must also take account of the public interest." Id. One element of that public interest is the value of judicial opinions: "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by vacatur." Id. (internal quotation marks omitted) (quoting Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp., 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)). A court, therefore, must balance the equities to

determine if vacatur is in the public interest. See Nat'l Black Police Ass'n v. District of Columbia, 108 F.3d 346, 353–54 (D.C. Cir. 1997); see also Fund for Animals, 335 F. Supp. 2d at 25.[4]

Here, the weightiest reason that the Representatives raise for vacating this Court's prior opinion is to avoid this ruling having a preclusive effect in other discovery litigation related to the underlying action. See Representatives' Reply [ECF No. 50] at 4–5. A decision's preclusive effect (whether claim preclusion or issue preclusion) bars future litigation of that same cause of action or of the same issue of law or fact litigated between the same parties. In contrast, a decision's precedential effect is its weight as binding authority on a particular rule of law in subsequent proceedings. They argue that should the underlying litigation continue, "discovery could be reopened, and [] one or more of the Members could again be dragged . . . into a discovery dispute . . . [and they] might arguably be collaterally estopped from relitigating the issues that they attempted to raise on appeal." Id. at 4–5. Indeed, the preclusive effect of a judgment on later litigation in the same case can be a proper reason for a court to grant the equitable remedy of vacatur. See Kelso v. U.S. Dep't of State, 13 F. Supp. 2d 12, 17 (D.D.C. 1998) ("[V]acatur can be an equitable remedy to relieve a party of a judgment's preclusive effect, review of which cannot be had on appeal due to intervening events that moot the controversy."). And when the D.C. Circuit "routinely" vacates district court decisions due to mootness, especially discovery-related

---

[4] U.S. Bancorp dealt with one particular reason why a Court should not employ the equitable remedy of vacatur: when "the party seeking relief from the judgment below caused the mootness by voluntary action." U.S. Bancorp, 513 U.S. at 24. There is no dispute that the Representatives were diligent in seeking timely review of this Court's prior opinion. The Representatives argue that they therefore met their burden of showing that their voluntary action did not cause mootness, and therefore vacatur is appropriate. JWV, however, contends that the Representatives did bring about mootness of the discovery issue because they delayed producing responsive documents so that the underlying action could become moot before they had complied with this Court's prior order. The Court will not wade into a factual dispute regarding whether the Representatives acted promptly in complying with their discovery obligations. Rather, although under U.S. Bancorp a party's voluntary action in causing mootness is one reason why a Court should deny vacatur, it is not the only reason. Here, the Court considers the balance of equities and the public interest in vacatur without reaching the issue whether the Representatives "caused the mootness by voluntary action." See id.

5

decisions, the underlying litigation is usually ongoing (even if on appeal) and thus there is the valid concern of harm due to the preclusive effect of the unreviewable district court opinion. See, e.g., City of El Paso v. S.E. Reynolds, 887 F.2d 1103, 1105–06 (D.C. Cir. 1989); Lopez Contractors, Inc v. F&M Bank Allegiance, 90 F. App'x 549, 550 (D.C. Cir. 2004) (nonprecedential).

But that concern is no longer present here: the underlying litigation has gone to the Ninth Circuit, been denied certiorari by the Supreme Court, been remanded to the district court, once again been denied certiorari by the Supreme Court, and then been mooted by legislation from the U.S. Congress that transferred the land to a private party. It is plainly and completely over. There can therefore be no more discovery in this or related litigation. Thus, the Representatives cannot be harmed by the preclusive effect of this Court's prior opinion, because there is none.

Rather, any harm from this opinion stems from its precedential effect, that is, from its use in unrelated court proceedings. As the Seventh Circuit has explained, courts "vacate unappealable decisions[] to prevent them from having a preclusive effect. [Courts] do not vacate opinions[] to prevent them from having a precedential effect." In re Smith, 964 F.2d 636, 638 (7th Cir. 1998). To vacate an opinion simply because of its precedential effect, when it has no preclusive effect, would deny the "legal community as a whole" of the value of judicial opinions, and treat such opinions as "merely the property of private litigants." See U.S. Bancorp Mortg., 513 U.S. at 26. The value of clear judicial opinions, especially in areas that are not frequently litigated, has led the D.C. Circuit to state that under U.S. Bancorp, in at least some circumstances, "the establishment of precedent argues against vacatur, not in favor of it." Mahoney v. Babbitt, 113 F.3d 219, 223 (D.C. Cir. 1997); see also Fund for Animals, 335 F. Supp. 2d at 27–28; 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 3533.10 (2d ed. 1984) ("So long as the court believed that it was deciding a live controversy, its opinion was forged and tested in the

6

same crucible as all opinions."). And in this case, importantly, this Court's prior opinion has little precedential effect. As a district court opinion, it is not binding on any court beyond its use in this case, and instead, is only valuable as persuasive authority. See In re Executive Office of the President, 215 F.3d 20, 24 (D.C. Cir. 2000); see also Fund for Animals, 335 F. Supp. 2d at 27. Thus, no harm could come to the Representatives from leaving this Court's prior opinion on the books, while harm would come to the "legal community as a whole" from vacatur.

The Representatives also argue the prior opinion should be vacated because it reaches constitutional questions. See Representatives' Reply at 3. The D.C. Circuit has noted that constitutional avoidance is a factor that may weigh in favor of vacatur. See, e.g., Nat'l Black Police Ass'n, 108 F.3d at 354; City of El Paso, 887 F.2d at 1106. However, as explained above, the D.C. Circuit has also held that where an opinion establishes precedent on a rarely-litigated constitutional issue (in that case, a First Amendment issue), that presents a reason to deny vacatur. Mahoney, 113 F.3d at 222–23. This Circuit's precedent, then, does not provide a bright-line rule. That has led at least one district court to determine that where a "case sets strong precedent in interpreting laws in which little has been written" that fact "weighs in favor of denying vacatur from the public interest perspective." Fund for Animals, 335 F. Supp. 2d at 28 (citing Keeler v. Cumberland, 951 F. Supp. 83, 84 (D.Md. 1997)). The Court therefore places more emphasis on the considerations discussed above, namely, the absence of harm to the Representatives from denying the motion to vacate as weighed against the harm to the public that would come from granting the motion.

## CONCLUSION

For the reasons explained above, the Court will deny the Representatives motion for vacatur of this Court's September 18, 2007 opinion. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 21, 2017